United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 18, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 04-20079

_____

LINCOLN GENERAL INS. CO.,

Plaintiff - Appellee

versus

CESAR REYNA d/b/a REYNA TRAVEL TOURS CO.;
JOEL QUINONES LOZANO,

Defendants - Appellees

versus

MAYRA LIZETH ARELLANO MEDINA, Individually as next friend of
Jorge Luis Garza Arellano and on behalf of the Estate of Jorge Alfonso
Garza Cantu; JOSE RODRIGO GARZA RAMOS; MARIA DEL SOCORRO
CANTU SERNA; MANUEL GUADALUPE ALANIZ MUNIZ; MARIA
BARTOLO OYERVIDEZ OYERVIDEZ, individually and on behalf of the
Estate of Manuel Guadalupe Alaniz Oyervidez,

Movants-Appellants

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before WIENER and PRADO, Circuit Judges, and KINKEADE[1], District Judge.

---

[1] District Judge for the Northern District of Texas, Dallas Division, sitting by designation.

KINKEADE, District Judge:

This appeal stems from the entry of summary judgment in favor of Lincoln General Insurance Company ("Lincoln") in a declaratory judgment action seeking the district court's determination of Lincoln's duty to defend Cesar Reyna ("Reyna"). For the following reasons, we AFFIRM the district court's grant of Lincoln's summary judgment motion.

## I. FACTUAL BACKGROUND

Lincoln issued a business auto policy to Reyna. This policy was effective February 7, 2002, through February 7, 2003. It is undisputed that during the policy's effective dates, a bus crash occurred in Mexico involving a bus owned by Reyna and driven by one of his employees, Defendant–Appellant, Joel Quinones Lozano ("Lozano"), and another vehicle. As a result of the head-on collision, Jorge Cantu and Manuel Oyervidez (collectively, "victims"), both in the other vehicle, were killed.

Mayra Lizeth Arellano Medina, Jose Rodrigo Garza Ramos, Maria Del Socorro Cantu Serna, and Manuel Guadalupe Alaniz Muniz, all relatives of Mr. Cantu (collectively "Cantu Plaintiffs"), filed suit in Texas state court against Reyna and Lozano on May 15, 2002. Lincoln informed Reyna that it was denying coverage and would not be providing his defense in the state court action. Reyna never filed an answer, and on September 11, 2002, the Cantu Plaintiffs obtained a default judgment against Reyna and Lozano. On November 12, 2002, the state court entered a final judgment against Reyna and his driver Lozano for approximately $13 million with Reyna liable for 90% of the damages. In addition, the judgment transferred Reyna's right to the insurance proceeds from the Policy to the Cantu Plaintiffs.

Lincoln filed the declaratory action that is the subject of this appeal on November 4, 2002. Lincoln sought the federal district court's determination of whether coverage for the damages and loss resulting from the bus crash existed and, consequently, whether Lincoln was required to defend Reyna. The Cantu Plaintiffs, as well as Maria Bartolo Oyervidez Oyervidez, on behalf of Mr. Oyervidez, (collectively "Intervenors") were permitted to intervene. Lincoln and Intervenors filed cross-motions for summary judgment with the trial court ultimately granting Lincoln's motion for summary judgment.

## II. STANDARDS OF REVIEW

### A. Summary Judgment Standard

In reviewing a district court's grant of summary judgment, this Court uses a *de novo* standard and applies the same legal standards as the district court.[2] Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[3] The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.[4] The burden then shifts to the nonmovant to show the existence of a genuine fact issue for trial; however, the nonmovant may not rest upon allegations in the pleadings to make such a showing.[5] All evidence and reasonable inferences must be viewed in the light most favorable

---

[2] *American Home Assurance Co. v. United Space Alliance, LLC.*, 378 F.3d 482, 486 (5th Cir. 2004).

[3] FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[4] *Celotex,* 477 U.S. at 322-25.

[5] *Id.* at 321-25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57(1986).

to the nonmovant.[6]

**B.      Duty to Defend Standard**

This Court examines whether Lincoln had a duty to defend Reyna using a *de novo* standard

of review.[7]   Under Texas law, an insurer's duty to defend is determined by the "eight corners"

doctrine, or "complaint allegation rule"; in other words, the court looks only to the allegations in the

pleadings and the language of the insurance policy.[8]  Using this analysis, the allegations in the petition

are liberally interpreted.[9]

The "four corners" of the complaint must allege facts that, if taken as true, could possibly

assert a claim within the scope of coverage in the "four corners" of the insurance policy; otherwise,

an insurer is not legally required to defend a suit against its insured.[10]  The court must look to the

alleged facts in the pleadings, not the legal theories being asserted.[11]  Any doubt regarding the duty

to defend is resolved in favor of the duty.[12]  However, if the only facts alleged are excluded from the

policy's coverage, the insurer is not required to defend.[13]  It is the insured's burden to establish that

---

[6] *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

[7] *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 527 (5th Cir. 2004).

[8] *Id.* at 527-28; *National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

[9] *National Union Fire*, 939 S.W.2d at 141.

[10] *Northfield*, 363 F.3d at 528; *see Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1492 (5th Cir. 1992) ("If any allegation in the complaint is even potentially covered by the policy then the insurer has a duty to defend its insured.").

[11] *Northfield*, 363 F.3d at 528; *National Union Fire*, 939 S.W.2d at 141.

[12] *Northfield*, 363 F.3d at 528.

[13] *Id.*

a claim is potentially within the scope of coverage.[14] Once the insured has established this, the burden shifts to the insurer to show "that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule."[15]

### III. DISCUSSION

Intervenors claim in their first issue the district court erred in granting Lincoln's summary judgment motion. In their second issue on appeal, Intervenors contend Lincoln's standard business auto policy requires it to provide a defense to Reyna for the negligent hiring, training, and supervision claim. In their final issue on appeal, Intervenors argue, based on *King v. Dallas Fire. Ins. Co.*,[16] that a claim for negligent hiring, training, and supervision equates to an "accident" under the Policy, thereby independently triggering coverage and a duty to defend.

Citing to the Texas Supreme Court in *King*,[17] Intervenors claim the district court erred in determining "accident" was restricted to an automobile collision and did not include coverage for negligent hiring, training, and supervision. Irrespective of the bus crash occurring in Mexico, they argue Lincoln's duty to defend Reyna was triggered by Reyna's actions of negligently hiring, training, and supervising Lozano, which occurred in Texas within the coverage area, because his actions constitute an "accident" under the Policy. Lincoln contends that because the bus crash occurred outside the coverage area, under the language of the Policy, coverage was never triggered; therefore,

[14] *Id.*

[15] *Id.*

[16] 85 S.W.3d 185 (Tex. 2002).

[17] *Id.*

it was not required to defend Reyna.

## A.    Alleged Facts in State Court Petition

In their First Amended Original Petition ("Petition") in state court, the Cantu Plaintiffs assert separate claims of negligence against Lozano and Reyna. This Court must look beyond the claims asserted, to the alleged facts.[18] Paraphrasing those allegations, the Cantu Plaintiffs allege in the Petition's factual background that the bus crash, which killed the victims, occurred in Mexico. The Cantu Plaintiffs also contend Lozano operated the bus in a negligent manner, causing the collision and their damages. They add that his negligence was a breach of the duty to exercise ordinary care in operating the bus "reasonably and prudently." In their allegations against Reyna, they contend that Reyna is vicariously liable for their damages, because of Lozano's negligence. They also allege Reyna is directly liable to them for their damages because he breached an independent duty of care in negligently entrusting Lozano with the bus, failing to implement safety policies, failing to enforce company safety policies, and negligently hiring, training, supervising, and retaining Lozano.

## B.    Policy Provisions

The policy explicitly sets forth the conditions which must be met in order to trigger coverage. Coverage is triggered when "bodily injury or property damage" results from an "accident" and "from the ownership, maintenance or use of a covered auto." The policy defines "accident" as including "continuous or repeated expo sure to the same conditions resulting in bodily injury or property damage." The accident or loss must occur within (1) the policy period and (2) the coverage territory. The coverage territory is defined in the policy as the United States, territories and possessions of the United States, Puerto Rico, and Canada.

---

[18] *See Northfield*, 363 F.3d at 528.

**C.    Analysis**

Employing the "eight corners" doctrine, the issue before this Court is whether the facts, as alleged in the state court pleadings, give rise to potential coverage under the Policy, thereby triggering Lincoln's duty to defend Reyna.

Intervenors contend Reyna's actions in negligently hiring, training, and supervision Lozano are an "accident" as defined by the Policy, separately triggering coverage and the duty to defend. As support for their argument, Intervenors rely on the Texas Supreme Court case of *King v. Dallas Fire Ins. Co.*,[19] in which the court held a duty to defend existed because the claim against the insurer for negligent hiring, training, and supervision was an "occurrence" under the policy regardless of the underlying intentional conduct being excluded from coverage. They allege it is dispositive because the language of the policy provision in *King* is nearly identical to the language in the Policy at issue. Lincoln contends this case is more akin to *Fidelity & Guaranty Ins. Underwriters, Inc. v. McManus*,[20] in which the court determined the insured had no duty to defend because the claim against the insured for negligent entrustment could not exist without the underlying negligent conduct which was excluded from coverage.

 1.    *Fidelity & Guaranty Ins. Underwriters, Inc. v. McManus*

In *McManus*, the insurer filed a declaratory judgment action against the insured to determine the insurer's duty to defend. The insured's son loaned a bicycle to a friend, who subsequently collided with another bicyclist. The cyclist sued the insured alleging negligent entrustment. The insurance policy contained an exclusionary provision, stipulating that no coverage existed when use

_____

[19] 85 S.W.3d 185 (Tex. 2002).

[20] 633 S.W.2d 787 (Tex. 1982).

of the bicycle caused bodily injury "away from the resident premises."[21] The Texas Supreme Court stated, "Essential to recovery, therefore, is negligent entrustment by the owner. . .of the instrumentality, plus its negligent operation or use by the entrustee."[22] In other words, there would have been no coverage-triggering accident of negligent entrustment claim *but for* the negligent operation or use of the bicycle which was excluded from coverage.[23] Therefore, no duty to defend existed because the facts as alleged indicated the underlying conduct was excluded from coverage.[24]

### 2. *King v. Dallas Fire Ins. Co.*

In *King*, the insured brought a declaratory judgment action against its insurer seeking a determination that the insurer had a duty to defend the insured under its commercial general liability policy. The negligent hiring suit against the company arose out of the *intentional* assault of the victim by the company's employee. The issue before the *King* court was whether the employer's negligent hiring, training, and supervision was an "occurrence" under the policy when the employee's intentional conduct caused the injury. An exclusionary provision in the policy excluded coverage for any intentional or expected injury or damage.[25] The policy contained a separation-of-insureds provision.[26] The court stated that the exclusionary provision at issue "expressly states that whether

---

[21] *Id.* at 788.

[22] *Id.* at 790 (emphasis added).

[23] *Id.*

[24] *Id.*

[25] *King*, 85 S.W.3d at 188.

[26] *Id.*

an occurrence was an accident depends on the insured's standpoint."[27]

The Texas Supreme Court looked to decisions from other jurisdictions in which those courts "considered whether an employer's negligent hiring, training, and supervision is an 'occurrence' when an employee's *intentional conduct* caused the alleged injury."[28] The *King* court addressed the cases where the court had determined no duty to defend existed because the employee's conduct was intentional and therefore excluded. In making their determinations, those courts used a "but for" or "arising out of" test, according to which no cause of action against the insured-employer would exist "but for" the employee's intentional conduct, which was excluded; therefore, no "occurrence" existed to trigger coverage.[29] The cases discussed by the *King* court involve injuries or damages resulting from employee's intentional conduct, not negligence. The *King* court noted that applying the "but for" or "arising out of" standard in those scenarios with intentional conduct resulted in imputing the actor's intent to the insured, which was against the policy's separation-of-insureds language.[30] Instead, the court concluded it must look from the insured's standpoint, as required by the language of the policy, in determining whether the insured was negligent in contributing to the injury.[31] In its explanation, the court reasoned that "whether one who contributes to an injury is negligent is an inquiry independent from whether another who directly causes the injury acted intentionally."[32] The

---

[27] *Id.* at 189.

[28] *Id.* at 190-91 (emphasis added).

[29] *See id.*

[30] *Id.* at 191-92.

[31] *Id.*

[32] *Id.*

court concluded its discussion with a look at the evolution of the Commercial General Liability policy which also focused on intentional conduct and its relation to the definition of "occurrence."[33]

Notably, the *King* court did address its prior decision in *McManus*. It distinguished *McManus* by concluding it was "inapposite" because it did not necessitate a determination of intent.[34] Accordingly, they were not required "to consider the insured's relationship to the event, because the exclusion was premised on a readily determined fact–whether the recreational motor vehicle was being used away from the residence."[35]

3.      Instant Appeal

We find that *King* is distinguishable from the instant appeal. In *King*, the court was faced with an exclusionary provision that required it to determine whether the event was an occurrence from the insured's standpoint.[36] Had the court not viewed it in this way, the result would have been imputing the employee's intentional conduct to the insured-employer which, as the court noted, would render meaningless the intentional injury exclusion as well as ignore the policy language regarding intentional injuries being viewed from the insured's standpoint.[37] As we read *King* with the court's detailed analysis, we conclude the court's determination that negligent hiring, training, and supervision is an occurrence applies in cases involving intentional conduct where the court is required to interpret intent and from whose standpoint. Intervenors would have us conclude *King* intended the term

---

[33] *Id.* at 192-93.

[34] *Id.* at 189.

[35] *Id.*

[36] *Id.* at 189.

[37] *Id.*

-10-

"accident" to always include a claim for negligent hiring, training, and supervision regardless of the type of employee conduct. However, to do so in cases involving injury-causing negligence, such as this case, would call into question intent when there is none. By the mere definition, negligence does not involve intent. In this case, intent is not at issue as it was in *King*, so we are not required to determine intent of the insured. Consequently, *King* does not apply.

We find it of great significance that when given the opportunity, the *King* court did not overrule *McManus*, instead distinguishing it on the grounds that intent was not called into question in that case. Also noteworthy is the *King* court's failure to discuss cases involving an employee's negligent conduct, such as *Travelers Indemnity Co. v. Citgo Petroleum Corp.*[38] or *Centennial Ins. Co. v. Hartford Accident and Indemnity Co.*.[39] The question of the insurer's duty to defend arose in both cases. In each case, a negligence claim was asserted against the insured-employer, and the employee's underlying conduct was negligent and excluded from coverage. In both cases, the courts, including this Court, concluded no duty to defend existed because the negligence claim against the insured-employer arose out of the excluded underlying negligent conduct.[40] The *King* court expressly chose to limit its decision to cases involving injury-causing intentional conduct by an employee.

As previously discussed, the *King* court was critical of courts which had applied the "but for" or "arising out of" standard to situations involving similar issues to those in *King*. This included critiquing this Court in prior opinions addressing whether negligent hiring, training, and supervision

---

[38] 166 F.3d 761 (5th Cir. 1999).

[39] 821 S.W.2d 192 (Houston [14th]–1991, no pet.)

[40] *Travelers*, 166 F.3d at 771; *Centennial*, 821 S.W.2d at 195.

-11-

was an "occurrence."[41]  However, the Fifth Circuit cases cited in *King* all involve an employee's intentional conduct; none involve an employee's negligent conduct, like *Travelers*.

*McManus* is more instructive in a case involving injury-causing negligence.  In this case, intent is not at issue just as it was not in *McManus*.  There is no intentional conduct by Lozano to impute to Reyna, so we need not interpret the language of intent.  We conclude in cases involving injury caused by negligence where intent is clearly not at issue, the "but for" or "arising out of" standard still applies.  Under the "but for" standard, there could be no cause of action against the employer but for the employee's negligent conduct, and where the employee's conduct does not fall within the scope of coverage, there is no occurrence or accident to trigger coverage and the duty to defend.[42]  The "but for" analysis applies in this case.

Although Intervenors assert claims against Reyna for which they allege he is directly liable for their damages, we do not look merely to the claims asserted, but to the alleged facts.[43]  Looking at this under the "eight corners" doctrine, there is no dispute the collision occurred within the Policy period and in Mexico.  The clear language of the Policy provides coverage for any accident that occurs within the Policy period and within the coverage territory.  Mexico is not included in the Policy's definition of the coverage territory.  Reyna's negligence would not exist but for the bus crash in Mexico, for which there can be no coverage.  As in *McManus*, the issue of whether there is potential coverage, and consequently a duty to defend, is  "premised on a readily determined fact,"

---

[41] *King*, 85 S.W.3d at 190-91.

[42] *Id.* at 191.

[43] *Northfield*, 363 F.3d at 528.

-12-

that is whether the event happened within the Policy period and coverage territory.[44] The Policy language provides that there is no coverage for injuries or damages resulting from an accident in Mexico. That Reyna's alleged negligence occurred in Texas is irrelevant because the cause of action against him arises out of the bus crash in Mexico which does not fall within the coverage provisions. Applying the "eight corners" doctrine, Lincoln is not required to defend Reyna because the only facts alleged are those excluded from coverage.[45]

Because intent is not a question in this appeal, *King* is distinguishable and, therefore, not dispositive as Appellants contend. Employing the "eight corners" doctrine as Texas law requires, the facts as alleged in the Petition indicate they fall outside the scope of the Policy; therefore, Lincoln has no duty to defend Reyna.[46]

## IV. Conclusion

For the forgoing reasons, we hold Lincoln owes no duty to defend Reyna under these facts. The district court's grant of Lincoln's summary judgment is hereby,

AFFIRMED.

---

[44] *King*, 85 S.W.3d at 189.

[45] *See Northfield*, 363 F.3d at 528.

[46] *See Northfield*, 363 F.3d at 528; *McManus*, 633 S.W.2d at 790.