United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 13, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-20156
Summary Calendar

KAREN MOWBRAY

Plaintiff - Appellant

v.

AMERICAN GENERAL LIFE COMPANIES; AMERICAN GENERAL CORP; AMERICAN
INTERNATIONAL GROUP INC; AMERICAN INTERNATIONAL REALTY CORP,
American International Realty Corp; AMERICAN GENERAL LIFE
COMPANIES, doing business as American General Financial Group

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas, Houston
No. 4:03-CV-2648

Before KING, Chief Judge, and SMITH and GARZA, Circuit Judges.

PER CURIAM:[*]

In this action pursuant to the Family and Medical Leave

Act, Plaintiff-Appellant Karen Mowbray appeals the district

court's grant of summary judgment in favor of Defendants-

Appellees, who Mowbray claims took adverse employment action

against her in retaliation for her taking medical leave.  For the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

reasons stated below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Defendants-Appellees in this action consist of American General Life Companies ("AGLC"); AGLC's parent corporation, American General Corporation ("AGC"); AGC's parent company, American International Group, Inc. ("AIG"); and an AIG subsidiary, American International Realty Group ("AIRC") (collectively, "Defendants-Appellees"). Until August 29, 2001, Plaintiff-Appellant Karen Mowbray worked for AGLC in Houston, Texas, as the Vice President for Administrative Services. On August 29, 2001, AIG acquired AGC and its subsidiary AGLC; soon thereafter, Mowbray was promoted to Senior Vice President and Chief Procurement Officer and began reporting to Fred Wunschel, an AIRC employee based in New York who oversaw procurement for all AIG affiliates.

On September 10, 2001, Mowbray traveled to New York City on a business trip and was in New York the next day when the September 11 terrorist attacks occurred. Although she received no physical injuries, Mowbray suffered post-traumatic stress disorder as a result of the attacks. Mowbray continued to work for several weeks on assignments related to the integration of AGC and AIG until she suffered a nervous breakdown at work, which she claimed was related to her September 11 experience.

On November 29, 2001, she informed AGLC's human resources

department of her post-traumatic stress disorder diagnosis, requested a leave of absence, and submitted a claim to AGLC for workers' compensation benefits. AGLC granted Mowbray a leave of absence, extended it three times at Mowbray's request, and granted Mowbray short-term disability benefits. Mowbray also sent Wunschel an e-mail and left a voice message informing him of her leave, but did not tell him the reason for her leave or that she would be receiving workers' compensation benefits. While Mowbray was on leave, her subordinates performed her duties. During this time, her promotion compensation package was approved, and Mowbray received a $40,000 raise to $170,000 per year and a $30,000 bonus.

On or about March 20, 2002, after sixteen weeks of leave, Mowbray returned to work in the midst of organizational changes related to the post-merger integration of AGC and AIG. Mowbray quickly became dissatisfied with a number of the changes related to her job, specifically Wunschel's decision to transfer the "business continuity" and "business function" components of Mowbray's position to another employee charged with managing those functions on behalf of the merged organization. Although Mowbray immediately called Wunschel upon her return regarding these concerns, he did not return her call, and Mowbray felt that he was cold and unfriendly in her subsequent interactions with him.

In early July 2002, Mowbray learned that Wunschel had hired

-3-

executive Patrick Eagan to oversee all international procurement functions from the company's New York office; Wunschel then informed Mowbray that she should "start planning [her] exit from the organization." Memorandum and Order, Mowbray v. Am. Gen. Life Cos., No. H-03-2648, at 4 (Jan. 24, 2005) [hereinafter "Dist. Ct. Order"]. Later that month, Wunschel gave Mowbray three options: (1) accept a position as a manager in Houston and report to Eagan, a position that paid less and that Mowbray considered a demotion; (2) seek another executive position within ACG or AIG, which Mowbray believed would have been difficult given the cutbacks related to the integration; or (3) end her employment with the company and accept a severance package of over $240,000. Mowbray chose to accept the severance package and terminate her employment, effective August 23, 2002.

Mowbray filed a lawsuit in Texas state court alleging that Defendants-Appellees retaliated against her in violation of state law for taking medical leave and receiving workers' compensation. Defendants-Appellees moved for arbitration pursuant to AGLC's Employment Dispute Resolution Plan, and the state court ordered that only AGLC was entitled to arbitration because it was the only one that was a party to the arbitration agreement with Mowbray. While the arbitration proceeded, Mowbray added federal claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. Defendants-Appellees

-4-

removed the case to federal court. The district court stayed the case pending the outcome of the arbitration.

In December 2003, AGLC moved in the arbitration for summary judgment. The arbitrator issued an order granting summary judgment for AGLC on all claims on February 2, 2004.[1] The district court subsequently granted AGLC's motion to confirm the arbitration award. On October 15, 2004, the remaining Defendants-Appellees filed a motion in district court for summary judgment. The district court granted summary judgment on behalf of Defendants-Appellees on all of Mowbray's claims on January 24, 2005. With regard to Mowbray's FMLA claim, the district court held that, as a matter of law, Mowbray could not prove causation or adverse employment action on the part of the remaining

---

[1] After considering the summary judgment evidence, the arbitrator found the following facts:

(1) AGLC was Mowbray's employer; (2) AGLC paid Mowbray's salary; (3) Mowbray's job titles indicate she was an employee of AGLC and she was promoted by AGLC; (4) Mowbray applied for and received through AGLC, and AGLC's human resources department, workers' compensation benefits, FMLA leave, and short-term disability leave; (5) Wunschel was not employed by AGLC, but was employed by AIRC, a subsidiary of AIG; (6) Mowbray did not tell Wunschel about her [medical] condition, the reason for her leave, or that she received workers' compensation benefits; (7) Mowbray did not believe that Wunschel or AGLC interfered with her benefits; and (8) Mowbray requested and received a severance package from AGLC.

Dist. Ct. Order at 13 (summarizing the arbitrator's factual findings).

Defendants-Appellees.[2]  Mowbray filed this timely appeal,

challenging the grant of summary judgment on her FMLA claim.[3]

## II. DISCUSSION

### A.    Standard of Review

We review a grant of summary judgment de novo, applying the

same standard as the district court.  Chaplin v. NationsCredit

Corp., 307 F.3d 368, 371 (5th Cir. 2002).  Summary judgment is

appropriate when the moving party establishes that, based on the

"pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, . . .

---

[2] The arbitrator found that AGLC was Mowbray's actual employer, and the district court held that this factual determination is entitled to preclusive effect under the doctrine of collateral estoppel.  Dist. Ct. Order at 18.  However, the district court correctly recognized that the FMLA definition of "employer" is not limited to a plaintiff's actual employer. Under the FMLA, an action can be brought against an actual employer or "any person who acts, directly or indirectly, in the interests of [an] employer," 29 U.S.C. § 2611(4)(A)(ii)(I).  The district court found that, given this broad definition of "employer," Mowbray had created a fact issue as to the identity of her employer for FMLA purposes because of the inter-relationship of operations among the parent corporations and their various subsidiaries.  Dist. Ct. Order at 26.  Therefore, for the purpose of Mowbray's FMLA claim, the district court assumed, without deciding, that Mowbray was "employed" by Defendants-Appellees collectively.  Id. at 26.  For the same reasons, we will likewise assume, without deciding, that Mowbray was employed by Defendants-Appellees collectively for FMLA purposes.

[3] Mowbray assigns as error only the grant of summary judgment on her FMLA claim; she does not challenge the district court's grant of summary judgment on her ERISA or state-law claims.  Accordingly, we will not consider these issues on appeal.  See FED. R. APP. P. 28(a)(9); 5TH CIR. R. 28.3(j).

there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment "bears the burden of identifying those portions of the record it believes demonstrate the absence of an issue of material fact." Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 349 (5th Cir. 2005); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to "show the existence of a genuine fact issue for trial." Reyna, 401 F.3d at 349; see also Celotex, 477 U.S. at 324. To decide whether a genuine fact issue exists, we view the evidence and all reasonable inferences from the evidence in the light most favorable to the non-moving party. Reyna, 401 F.3d at 350.

**B. Analysis**

The FMLA prohibits an employer from retaliating against an employee for taking a leave of absence pursuant to the FMLA. 29 U.S.C. § 2615. To make a prima facie case of retaliation under the FMLA, Mowbray must show that: (1) she was protected under the FMLA; (2) she suffered an "adverse employment action"; and (3) either (a) she was treated less favorably than an employee who had not taken FMLA leave, or (b) the adverse decision was made because she took FMLA leave. Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 768 (5th Cir. 2001). Based on our review of the undisputed factual record, we hold that Defendants-Appellees

are entitled to summary judgment because Mowbray did not suffer an adverse employment action as a matter of law.[4]

"[O]nly 'ultimate employment decisions,' such as hiring, granting leave, discharging, promoting, and compensating, satisfy the 'adverse employment action' element of a prima facie case of retaliation." Id. at 769 (citing Watts v. Kroger Co., 170 F.3d 505, 512 (5th Cir. 1999)). Neither verbal threats of termination nor merely being at risk of termination constitutes an adverse employment action. Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000) (holding that criticism and threats of termination did not rise to the level of adverse employment action); Mattern v. Eastman Kodak Co., 104 F.3d 702, 709 (5th Cir. 1997) (holding that the plaintiff's resignation, which preempted a possible termination, was insufficient to prove adverse employment action). Moreover, not "every unpopular employment decision following FMLA leave [is] a retaliatory adverse employment decision"; there must be some "evidence that, viewed objectively, the [employment decision] amounted to a form of discipline, a demotion, or a reduction in pay or benefits." Hunt, 277 F.3d at 770, 771 (holding that transfer of the plaintiff from the day shift to the night shift after she took FMLA leave was not an adverse employment action); see also

---

[4] Because our holding that Mowbray did not suffer an adverse employment action as a matter of law disposes of Mowbray's retaliation claim, we need not address the remaining elements of that claim.

-8-

Mattern, 104 F.3d at 709 (holding that a visit by a supervisor to the employee's home, a verbal threat of termination, a reprimand, and placing the employee on "final warning" did not constitute an adverse employment decision).

In this case, Mowbray did not suffer an adverse employment action because she opted to resign and collect her severance package before Defendants-Appellees made an ultimate employment decision regarding her position in the wake of the merger. Cf. Mattern, 104 F.3d at 709 (noting that the plaintiff "preempted a possible ultimate employment decision--she resigned"). Moreover, it is undisputed that, prior to her resignation, Mowbray did not suffer a decrease in salary, a change in title, or a demotion. Although Wunschel told her to "start planning [her] exit from the organization" in July 2002, this threat of future termination does not rise to the level of an ultimate employment decision, particularly in light of his subsequent offer to Mowbray, allowing her to choose whether to remain with the organization or to collect severance pay. See Breaux, 205 F.3d at 158.

Despite having this choice, however, Mowbray argues that she was forced to resign because Defendants-Appellees' actions amounted to a constructive discharge, which qualifies as an adverse employment action. "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." Hunt, 277 F.3d at 771. In determining whether an employer's actions

constitute a constructive discharge, this court examines the following relevant factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

Id. at 771-72; see also Haley v. Alliance Compressor LLC, 391 F.3d 644, 650 (5th Cir. 2004).  This inquiry is an objective, "reasonable employee" test under which we ask "whether a reasonable person in the plaintiff's shoes would have felt compelled to resign."  Haley, 391 F.3d at 650.

The summary judgment evidence, even when considered in a light most favorable to Mowbray, reveals that a reasonable employee in Mowbray's position would not have felt compelled to resign.  Mowbray has presented no evidence establishing a genuine issue of material fact as to whether she was demoted, suffered a reduction in salary or job responsibilities, was reassigned to menial or degrading work, was subjected to badgering or harassment, or received an offer of early retirement that would have made her worse off; indeed, the record reflects that none of these things occurred.  See Hunt, 277 F.3d at 772 (affirming the district court's grant of summary judgment on constructive discharge where the employee felt demeaned by her reassignment to the night shift upon her return from medical leave); Brown v. Bunge Corp., 207 F.3d 776, 782-83 (5th Cir. 2000) (affirming a

-10-

grant of summary judgment for the employer even where employee had been demoted and received a reduction in job responsibilities upon his return to work); McKethan v. Tex. Farm Bureau, 996 F.2d 734, 741 (5th Cir. 1993) (affirming a summary judgment grant to the employer where the employee claimed he had been publicly ridiculed and admonished but failed to allege any of the other constructive discharge factors).  Moreover, that Mowbray had a choice of three viable options concerning her post-merger employment with Defendants-Appellees indicates that a reasonable employee would not necessarily have felt compelled to resign given that the other two options would have allowed her to remain employed with the organization.  See Haley, 391 F.3d at 652 (noting that no constructive discharge occurred where the employee had options other than resigning); Bozé v. Branstetter, 912 F.2d 801, 805-06 (5th Cir. 1990) (affirming the district court's grant of summary judgment to the employer on constructive discharge where the employee had options other than resigning, including using an internal grievance process).  Based on the summary judgment record before us, Mowbray has failed to establish any genuine issue of material fact, and Defendants-Appellees are entitled to judgment as a matter of law because the evidence does not support a finding of retaliation within the meaning of the FMLA.

### III. CONCLUSION

-11-

For the foregoing reasons, we AFFIRM the judgment of the district court.