United States Court of Appeals
Fifth Circuit

**F I L E D**

March 8, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

No. 05-30716
Summary Calendar

———————————————

RICHARD BRADY; SCHELLE BRADY; TRENT BRADY,

Plaintiffs-Appellants,

versus

STATE FARM FIRE & CASUALTY CO.,

Defendant-Appellee.

———————————————————————————

Appeal from the Unites States District Court
for the Western District of Louisiana
(No. 2:03-CV-1635)

———————————————————————————

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

In this diversity action, the district court granted summary judgment in favor of the defendant

and dismissed the plaintiffs' claim with prejudice. We affirm.

**I.  FACTS AND PROCEEDINGS**

Richard and Schelle Brady and their son Trent (collectively "the Bradys") lived in a home in

Sulphur, Louisiana. At all relevant times, the home was covered under a homeowner's insurance

———————————————

[*]Pursuant to 5th CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

- 1 -

policy issued by State Farm Fire & Casualty Co. ("State Farm"). The insurance policy contractually limited the insured's right to bring suit to within one year after the date of loss or damage.

On five occasions between September 1998 and April 2002, the Bradys suffered a covered loss. Each incident involved some form of water damage to the home and each was covered under the policy and paid by State Farm. The last incident, which involved a leaking air conditioner that damaged a ceiling occurred on April 28, 2002.

During the repairs for the April 28 air conditioner leak, a contractor showed the Bradys a moldy piece of sheet rock taken from the damaged area. On the advice of the contractor, the Bradys took samples of mold from their home and sent them to be tested. An adjustor for State Farm spoke to Mrs. Brady on April 30, at which time Mrs. Brady expressed concerns about the mold in her house. Again, on June 13, Mrs. Brady called State Farm about the presence of "black mold" in the home. The mold test results, which indicated positive for mold, came back to the Bradys by email on June 25, 2002.[1]

The day after receiving the email concerning the positive mold test results, Mrs. Brady discussed the mold issue with State Farm adjuster Scott Dory. Mrs. Brady told Dory that the house had tested positive for mold. At that time, Dory explained that the homeowner's policy contained exclusions for certain mold damage. On August 12, 2002, Dory went to the Bradys' home. Dory did not dispute the existence of the mold, but told Mrs. Brady that the type of test used did not prove that the mold was airborne. Dory recommended that the air be tested. No further tests were conducted before April 2003.

State Farm denied coverage for the mold damage claim in September 2002. On April 14,

---

[1]On July 7, 2002, the positive test results were again sent to the Bradys, this time by mail.

2003, State Farm received a letter from the Bradys' attorney demanding payment on the claim and advising that the Bradys would take legal action if State Farm did not respond by Friday, April 18, 2003. St ate Farm replied on April 17, 2003, and again denied liability. The Bradys filed suit in Louisiana state court on July 25, 2003. After State Farm removed the case to federal court, the parties engaged in discovery.

Deposition testimony revealed additional facts relevant to the timeliness of the Bradys' suit. Mr. Brady recounted how the contractor had told him that there was mold in the house and that the situation needed to be investigated furt her. He also described how both he and his son had been having nosebleeds for up to a year. In her deposition, Mrs. Brady indicated that she had been concerned about the mold for some time because the family had been sick for years. She specifically stated that she had directed the repairmen to look for mold while affecting the April 2002 repairs because she had seen soot-like black mold in the house previous to the air conditioning incident. She specifically stated that the mold had been present in the house for five to six months before April 2002.

In his deposition, Dory, t he State Farm adjuster, stated that at the time of his August 12 inspection there was no way to determine if the mold was airborne based on the tests that had been conducted. He testified that, in order to conclude that the mold was airborne, additional testing was required. He specifically stated that he could not determine whether the mold was airborne at the time of his inspection.

State Farm moved to dismiss the suit and, in the alternative, for summary judgment. Because the parties referred to evidence outside the pleadings, the district court treated the motion as one for summary judgment. State Farm pled a defense of prescription and that the claimed damage was

excluded under the policy. The district court concluded that the covered events took place more than a year before suit was filed and ruled in favor of State Farm. The district court did not reach the policy coverage issue.

## II. STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo and applies the same standards as the district court. *See Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). Summary judgment is appropriate if the pleadings, affidavits and other summary judgment evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Riverwood Int'l*, 420 F.3d at 382. For summary judgment, the initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the movant does so, the burden shifts to the nonmovant to show, by more than mere allegation, the existence of a genuine fact issue for trial. *Reyna*, 401 F.3d at 349–50. At all times, "[a]ll evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant." *Id.* at 350.

## III. DISCUSSION

In Louisiana, "insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." *Edwards v. Daugherty*, 883 So. 2d 932, 947 (La. 2004). The prescriptive period at issue here originates in the State Farm insurance policy. Under the terms of the policy, an "action must be started within one year after the date of loss or damage." This limitation is consistent with Louisiana's insurance code:

> No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state or any group health and accident policy insuring a resident of this state, regardless of where made or delivered shall contain any condition, stipulation, or agreement . . . [l]imiting right of action against the insurer . . . to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.

LA. REV. STAT. § 22:629(A)(3).

The parties do not dispute that the last water damage incident took place on April 28, 2002. Under the terms of the insurance policy, the Bradys had until April 28, 2003, to commence an action to recover under the policy. The Bradys did not commence this action until July 25, 2003. In their petition, the Bradys alleged that the family residence "suffered several sudden and accidental events resulting in water damage to the home," and that "[i]n August of 200[2],[2] [the Bradys], for the first time discovered toxic mold colonies had grown in their home as a result of the water damage ensued by the covered events under State Farm's policy."

Under the doctrine of *contra non valentem non currit praescriptio*, Louisiana law suspends the running of prescription, among other reasons, "where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant." *Carter v. Haygood*, 2004-C-0646, pp. 11–12 (La. 1/19/05); 892 So. 2d 1261, 1268. The Bradys contend that, under the discovery doctrine of *contra non valentem*, the running of prescription was suspended until at least August 12, 2002, because, according to the Bradys, no one knew or could

---

[2]Throughout the Bradys' petition, the date of discovery is identified as August 2003. This appears to be a scrivener's error; the event the Bradys rely on to show their lack of awareness is the August 12, 2002, inspection.

have known as of that date that the residence had mold damage. In support of this assertion, the Bradys refer to the deposition testimony of State Farm's adjuster, Scott Dory. However, the referenced testimony does not go so far as the Bradys would like. Dory stated only that, given the nature of tests that had been completed, he could not tell and the Bradys could not prove that the mold was airborne.

Louisiana courts are clear: "[M]ere unawareness of a potential cause of action is not enough to invoke *contra non valentum*." *Bell v. Kreider*, 03-CA-300 (La. App. 5 Cir. 9/16/03); 858 So. 2d 58, 62. Rather, plaintiffs "'will be deemed to know that which [they] could have learned from reasonable diligence.'" *Id.* (quoting *Hospital Serv. Dist. No. 1 of Jefferson Parish v. Alas*, 94-CA-897 (La. App. 5 Cir. 6/28/95); 657 So. 2d 1378, 1383). *See also Corsey v. State, Through Dep't. of Corrs.*, 375 So. 2d 1319, 1322 (La. 1979) ("This principle will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned."). Indeed, the burden falls to the plaintiff asserting the suspension of prescription to "show that he did not know or discover such facts, and that the lack of knowledge is not attributable to his fault." *Bell*, 858 So. 2d at 62 (internal quotation omitted).

There is no question that record evidence shows that the Bradys knew that the mold was present as early as April 2002. The Bradys do not dispute State Farm's characterization of the deposition testimony as showing that both Mr. and Mrs. Brady were aware of the mold when the repairmen came to their home in April 2002. Nor do the Bradys contest the fact that the sample they submitted for testing proved positive for mold. Their deposition testimony regarding the family's illnesses and the presence of the black soot-like mold only supports the district court's finding. The

Bradys conflate the determination of whether the mold was airborne with that of the mold's existence. To the extent that the question is whether the Bradys knew the mold was airborne, they have not argued that the test necessary to determine whether the mold was airborne was unavailable to them. They simply did not exercise due diligence in pursuit of their claim. Accordingly, the doctrine of *contra non valentem* does not suspend the claim's prescription. The district court did not err in concluding that the Bradys' action was prescribed.

## IV.    CONCLUSION

Finding no error, we AFFIRM.