# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 21, 2007**

Charles R. Fulbruge III
Clerk

No. 05-20938

LINCOLN GENERAL INSURANCE CO

Plaintiff - Intervenor Defendant - Appellee

v.

MARIA DE LA LUZ GARCIA, doing business as Garcia's Tours

Defendant

v.

CLAUDIA MORQUECHO, individually and as next friend of her minor child Diana Morquecho and her minor child Veronica Hernandez Morquecho; JOSE MORQUECHO; JUANA MORQUECHO, individually and as next friend of her minor child Erick Ivan Rodriguez Morquecho; MARCELINA MORQUECHO, individually and as next friend of her minor child Richardo Velazquez Morquecho; FIDEL MORQUECHO, individually and as personal representative of the Estate of Virginia Anquina Serna, his wife, deceased, and as personal representative of the Estate of Jamie Morquecho, his son, deceased

Intervenor Plaintiffs - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before KING, GARZA, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

The issue of first impression before us is whether a federally prescribed form endorsement covers a bus accident occurring in Mexico. The district court

held that it does not and granted summary judgment in favor of the insurer. For the reasons that follow, we affirm the judgment of the district court.

## I. BACKGROUND

### A. Factual Background

On April 7, 2004, a tour bus owned by Maria De La Luz Garcia, doing business as Garcia's Tours (collectively, "Garcia's Tours"), and operated by Jesus Escoto ("Escoto"), a Garcia's Tours' employee, was involved in an accident with a vehicle carrying eight members of the Morquecho family (collectively, the "Morquechos" or the "Morquecho family") in Monterrey, Mexico. The accident occurred on Garcia's Tours' bus route between Houston, Texas, and Celaya, Mexico. Two members of the Morquecho family were killed, and six others were injured.

At the time of the accident, Garcia's Tours held an insurance policy issued by Lincoln General Insurance Company ("Lincoln General"). The policy provides that Lincoln General "will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." The policy, however, contains several conditions, including a territorial restriction. That specific condition provides that Lincoln General will cover accidents and losses occurring only within the coverage territory, which is defined as the United States, the territories and possessions of the United States, Puerto Rico, and Canada, or "loss[es] to, or accidents involving, a covered auto while being transported between any of these places."

The policy also contains the federally mandated "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Section 18 of the Regulatory Reform Act of 1982," referred to as the MCS-90B endorsement because it is issued on federal form MCS-90B. Lincoln General issued the MCS-90B endorsement to Garcia's Tours in compliance with federal law, which

requires that for-hire motor carriers of passengers carry minimum levels of financial responsibility.[1] The policy and the MCS-90B endorsement were in effect on the date of the accident.

## B.    Procedural History

On July 6, 2004, the Morquechos filed suit against Garcia's Tours and Escoto (the bus driver) in Texas state court. The Morquechos asserted claims of negligence, negligent hiring, negligent entrustment, and negligent retention, and sought damages for the injuries sustained in the accident. Lincoln General denied coverage and refused to defend or indemnify Garcia's Tours in the state court action. The Texas state court ultimately found Garcia's Tours liable on all counts and awarded the Morquecho family over $1.2 million in damages.

While the state court suit was pending, Lincoln General filed this declaratory judgment action against Garcia's Tours in federal district court. Lincoln General sought a declaration that the policy did not provide coverage for any damages arising out of the accident involving the Morquechos and, consequently, that it had no duty to defend or indemnify Garcia's Tours under the terms of the policy. Because of their interest in this suit, the Morquecho family intervened. In their complaint, the Morquechos requested a declaration that the policy provided coverage for the accident and that the MCS-90B endorsement applied to any judgment rendered against Garcia's Tours in the underlying state court suit.

Lincoln General and the Morquechos subsequently filed cross-motions for summary judgment.[2] In its summary judgment motion, Lincoln General argued that it did not owe a duty to defend or indemnify the underlying state court

---

[1] For carriers with a seating capacity of sixteen passengers or more, such as Garcia's Tours, the minimum level of financial responsibility is $5 million.

[2] Garcia's Tours never filed a motion for summary judgment, nor did it respond to Lincoln General's motion.

action because the accident occurred in Mexico, outside of the policy's coverage territory, and because the MCS-90B endorsement did not expand coverage to Mexico under its plain terms. Although the Morquechos conceded that the body of the policy contained a territorial restriction that did not include Mexico, the Morquechos contended that the terms of the MCS-90B endorsement trumped the territorial limitation in the policy and mandated coverage for the accident.

The district court granted summary judgment in favor of Lincoln General. The district court reasoned that because "[t]he application of the MCS-90B endorsement derives its authority from the substantive provisions of 49 U.S.C. § 31138 and the jurisdictional limitations of 49 U.S.C. § 13501 . . . the regulations governing the applicability of the form MCS-90B endorsement are also limited to the transportation of passengers between a place in the United States and a place in a foreign country to the extent the transportation is in the United States." Dist. Ct. Order at 19 (internal quotation marks omitted). The district court held that "the application of form MCS-90B only applies to transportation that occurs within the United States, and does not apply to transportation occurring outside of the United States." Id. Based on its analysis, the district court concluded that "the MCS-90B endorsement cannot apply to the accident in this case, and that Plaintiff Lincoln General is not obligated to pay any final judgment recovered against Garcia['s] Tours as a result of the accident occurring in Mexico." Id. at 21.

On July 29, 2005, the district court entered a final judgment dismissing the case. On August 8, 2005, the Morquechos filed a motion for reconsideration, in which they argued, for the first time, that the endorsement covers Garcia's Tours' liability for negligent hiring, retention, and entrustment because those acts occurred in the United States and not in Mexico. On September 26, 2005, the district court denied the motion for reconsideration without commenting on the Morquechos' new argument.

4

The Morquechos now appeal, arguing that the district court erred in determining that the MCS-90B endorsement did not cover their accident in Mexico. According to the Morquechos, the endorsement reads out any language in the policy that would limit the right of injured third parties to recover, including the territorial restriction in the policy. In the alternative, the Morquechos raise the argument that they made in their motion for reconsideration, asserting that the endorsement covers the accident, even though it occurred in Mexico, because Garcia's Tours' negligent hiring, retention, and entrustment occurred in the United States. This court has jurisdiction over the Morquechos' appeal pursuant to 28 U.S.C. § 1291.[3]

## II. DISCUSSION

"We review the district court's summary judgment and its interpretation of the endorsement de novo." Wells v. Gulf Ins. Co., 484 F.3d 313, 315 (5th Cir. 2007). The operation and effect of a federally mandated endorsement is a matter of federal law. See Canal Ins. Co. v. First Gen. Ins. Co., 889 F.2d 604, 610 (5th Cir. 1989), modified on other grounds, 901 F.2d 45 (5th Cir. 1990)); see also John Deere Ins. Co. v. Nueva, 229 F.3d 853, 856 (9th Cir. 2000).

A.    Coverage of the MCS-90B Endorsement

The first question before us is whether the MCS-90B endorsement to the policy obligates Lincoln General to cover an accident occurring in Mexico. The

---

[3] Even though the district court did not explicitly rule on Lincoln General's claim that it did not have a duty to defend, the Morquechos contend that we have a final judgment that is appealable under § 1291. We agree. The district court's ruling of no coverage under the terms of the policy necessarily resolved Lincoln General's duty to defend claim. The MCS-90B endorsement does not create a duty to defend claims that are not covered by the policy. Cf. Harco Nat'l Ins. Co. v. Bobac Trucking, Inc., 107 F.3d 733, 735-36 (9th Cir. 1997) ("[F]ederal courts have consistently stated that the MCS-90 endorsement does not create a duty to defend claims which are not covered by the policy . . . .") (citing Canal Ins. Co. v. First Gen. Ins. Co., 889 F.2d 604, 612 (5th Cir. 1989), modified on other grounds, 901 F.2d 45 (5th Cir. 1990)).

resolution of this issue depends entirely upon the terms of the MCS-90B endorsement. The endorsement provides in relevant part:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a for-hire motor carrier of passengers with Section 18 of the Bus Regulatory Reform Act of 1982 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees judgement recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to financial responsibility requirements of Section 18 of the Bus Regulatory Reform Act of 1982 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. . . . It is understood and agreed that no condition, provision, stipulation or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgement, within the limits of liability herein described, irrespective of the financial conditio[sic], insolvency or bankruptcy of the insured. However, all terms, conditions and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.
>
> It is further understood and agreed that, upon failure of the company to pay any final judgement recovered against the insured as provided herein, the judgement creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment. . . .

By its plain language, the endorsement amends the policy only to the extent necessary to assure that insurers of for-hire motor carriers of passengers comply with Section 18 of the Bus Regulatory Reform Act of 1982. The endorsement also obligates the insurer to pay for any judgments "recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to financial responsibility requirements of Section 18 of the Bus Regulatory Reform Act of 1982 . . . ." Accordingly, to understand the scope of the MCS-90B endorsement, we must look to Section 18 of the Bus Regulatory Reform Act of 1982.

Section 18 of the Bus Regulatory Reform Act of 1982 provides that the Secretary of Transportation shall establish regulations to require minimum levels of financial responsibility to cover bodily injury and property damage for the transportation of passengers of for-hire motor carriers. See Bus Regulatory Reform Act of 1982, Pub. L. No. 97-261, 96 Stat. 1102 (1982). That section is now codified in 49 U.S.C. § 31138(a), which describes the minimum level of financial responsibility required by federal law. Section 31138 provides in relevant part:

> The Secretary of Transportation shall prescribe regulations to require minimum levels of financial responsibility sufficient to satisfy liability amounts established by the Secretary covering public liability and property damage for the transportation of passengers by commercial motor vehicle in the United States between a place in a State and--
> (1) a place in another State;
> (2) another place in the same State through a place outside of that State; or
> (3) a place outside the United States.

49 U.S.C. § 31138(a). Section 31138 thus requires the Secretary to establish minimum levels of financial responsibility to cover liability for bodily injury or property damage "for the transportation of passengers by commercial motor vehicle in the United States between a place in a State and--(1) a place in

7

another State; (2) another place in the same State through a place outside of that State; or (3) a place outside the United States." Id. (emphasis added). Consequently, although § 31138 recognizes that a commercial motor vehicle may be transporting passengers to "a place outside the United States," it requires minimum levels of financial responsibility only for the part of the transportation that occurs "in the United States." See id.

Reading the statute in conjunction with the MCS-90B endorsement, the minimum levels of financial responsibility requirements apply to the transportation of passengers "in the United States"; thus, the endorsement does not require an insurer to pay judgments recovered against the insured if the transportation of passengers by motor vehicle does not occur in the United States. Accordingly, the endorsement does not cover the Morquechos' accident in Mexico because the accident occurred in a place where the motor vehicle was not subject to the minimum financial responsibility requirements in § 31138.

This court's conclusion that the endorsement's coverage is limited to transportation "in the United States" comports with Congress's treatment of foreign motor carriers. Section 31138(c)(2) provides that

> [a] person domiciled in a country contiguous to the United States and providing transportation to which a minimum level of financial responsibility under this section applies shall have evidence of financial responsibility in the motor vehicle when the person is providing the transportation. If evidence of financial responsibility is not in the vehicle, the Secretary of Transportation and the Secretary of Treasury shall deny entry of the vehicle into the United States.

(emphasis added); see also 49 C.F.R. § 387.31(f) ("All passenger carrying vehicles operated within the United States by motor carriers domiciled in a contiguous foreign country, shall have on board the vehicle . . . proof of the required financial responsibility . . . .") (emphasis added).

The Morquechos nevertheless assert that the endorsement is simply a private insurance contract between the bus company and the insurer and that the endorsement's construction should be limited to the four corners of the document. According to the Morquechos, the endorsement invalidates any limitation or condition in the policy and applies regardless of whether the negligence at issue "occurs on any route or in any territory authorized to be served by the insured or elsewhere."

We disagree. The MCS-90B endorsement is not a private contract in which the parties negotiated the terms. Rather, the form and substance of the endorsement are mandated by federal law. The MCS-90B endorsement must be in the form prescribed by the Department of Transportation; therefore, the parties are not free to negotiate or change the terms in the form endorsement. See 49 C.F.R. § 387.39 ("Endorsements for policies of insurance . . . must be in the form prescribed by the [Federal Motor Carrier Safety Administration of the Department of Transportation] . . . ."); see also Ins. Corp. of N.Y. v. Monroe Bus Corp., 491 F. Supp. 2d 430, 436 (S.D.N.Y. 2007) (noting that the terms of the MCS-90B endorsement "are prescribed precisely by the federal transportation regulations" and that federal form MCS-90B "is the only form permitted by federal law").

Moreover, although the Morquechos correctly quote some of the language from the endorsement, they ignore the critical phrase in the endorsement limiting the insurer's payment of judgments recovered against the insured to "public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to financial responsibility requirements of Section 18 of the Bus Regulatory Reform Act of 1982. . . ." Because the Morquechos' accident occurred in Mexico, a place where the for-hire motor carrier was not subject to the minimum financial responsibility requirements of federal law, the MCS-90B endorsement is not applicable and does not provide coverage for the Morquechos'

accident. Thus, the district court did not err in concluding that the MCS-90B endorsement does not apply.

B.    Coverage for Claims of Negligent Hiring, Retention, and Entrustment

The second issue before the court is whether the MCS-90B endorsement covers Garcia's Tours' liability for negligent hiring, retention, and entrustment given that those acts occurred in the United States.[4] The Morquechos raised this issue for the first time in their motion for reconsideration before the district court. "We review a district court's denial of a motion for reconsideration for abuse of discretion." LeClerc v. Webb, 419 F.3d 405, 412 n.13 (5th Cir. 2005).

"[G]enerally speaking, we will not consider an issue raised for the first time in a Motion for Reconsideration." Leverette v. Louisville Ladder Co., 183 F.3d 339, 342 (5th Cir. 1999) (per curiam); see also LeClerc, 419 F.3d at 412 n.13 ("A motion for reconsideration may not be used to . . . introduce new arguments."); Mungo v. Taylor, 355 F.3d 969, 978 (7th Cir. 2004) ("Arguments raised for the first time in connection with a motion for reconsideration, however, are generally deemed to be waived."). Even if this court were to consider this argument, however, it is foreclosed by this circuit's decision in Lincoln General Insurance Co. v. Reyna, 401 F.3d 347 (5th Cir. 2005).

In Reyna, the intervenors argued that the insurer's policy covered a claim for negligent hiring, training, and supervision and required the insurer to defend its insured. 401 F.3d at 350. Although the bus crash occurred in Mexico, outside of the policy's coverage area, the negligent hiring, training, and supervising of the bus driver occurred in Texas, which was in the coverage area of the policy. Id. at 351. This court, however, rejected the intervenors' argument, concluding

---

[4] In the suit filed by the Morquechos against Garcia's Tours on July 6, 2004, the Texas state court found Garcia's Tours liable on claims of negligence, negligent hiring, negligent entrustment, and negligent retention.

10

that the accident was excluded from coverage and that there was no duty to defend. We reasoned that

> in cases involving injury caused by negligence where intent is clearly not at issue, the "but for" or "arising out of" standard still applies. Under the "but for" standard, there could be no cause of action against the employer but for the employee's negligent conduct, and where the employee's conduct does not fall within the scope of coverage, there is no occurrence or accident to trigger coverage and the duty to defend. The "but for" analysis applies in this case.
>
>                             * * *
>
> [T]here is no dispute the collision occurred within the Policy period and in Mexico. The clear language of the Policy provides coverage for any accident that occurs within the Policy period and within the coverage territory. Mexico is not included in the Policy's definition of the coverage territory. Reyna's negligence would not exist but for the bus crash in Mexico, for which there can be no coverage. . . . The Policy language provides that there is no coverage for injuries or damages resulting from an accident in Mexico. That Reyna's alleged negligence occurred in Texas is irrelevant because the cause of action against him arises out of the bus crash in Mexico which does not fall within the coverage provisions.

Id. at 354-55 (internal footnote omitted).

Although Reyna involved a policy and not the MCS-90B endorsement at issue in this case, Reyna's analysis applies with equal force here. It is undisputed that the operational negligence of Escoto, the bus driver, occurred in Mexico. Thus, the negligent hiring, retention, and entrustment would not exist "but for" the bus crash in Mexico, for which we have concluded there is no coverage under the endorsement. That the Morquechos alleged the negligence occurred in Texas is irrelevant because the cause of action against them arises out of the bus crash in Mexico, which does not fall within the coverage of the endorsement. Accordingly, under this court's holding in Reyna, we cannot conclude that the district court abused its discretion in denying the Morquechos' motion for reconsideration.

## III. CONCLUSION

For the reasons stated above, the district court's order granting summary judgment to Lincoln General is AFFIRMED.