602 F.Supp.2d 711 (2009)
Andrew BRUNSON, a minor, by and through his natural father and Guardian Ad Litem, Bryan BRUNSON; Logan Braddock, a minor, by his natural parent and Guardian Ad Litem, Winnie B. King; and Casey Atkinson, a minor, by her natural parents and Guardians Ad Litem, John and Chris Atkinson, Plaintiffs,
v.
CANAL INSURANCE COMPANY, Defendant/Third-Party Plaintiff,
v.
Lorenzo Arthur d/b/a Lorenzo Arthur Trucking; Emanuel Frierson d/b/a Frierson's Auto Sales; Bryan Brunson; Winnie B. King; John Atkinson; Chris Atkinson; and Nationwide Mutual Insurance Company, Third-Party Defendants.
Civil Action No. 4:06-398.
United States District Court, D. South Carolina, Florence Division.
August 23, 2007.
Karl Huggins Smith, Smith Watts and Associates, Fred Wilton Auman, III, Lucas Auman and Warr, Hartsville, SC, for Plaintiffs, Third-Party Defendants.
Jon Rene Josey, Richard Louis Hinson, Turner Padget Graham and Laney, Florence, SC, for Defendant/Third-Party Plaintiff.
James M. Saleeby, Jr., Aiken Bridges, Florence, SC, Robert Charles Brown, Brown and Brehmer, Columbia, SC, for Third-Party Defendants.

ORDER
TERRY L. WOOTEN, District Judge.
Plaintiffs Andrew Brunson, Logan Braddock, and Casey Atkinson ("Plaintiffs"), all minors, filed the instant declaratory judgment *712 action through their parents and guardians ad litem in the South Carolina Court of Common Pleas Fourth Judicial Circuit, County of Darlington, on December 21, 2005. (Doc. # 1). Defendant Canal Insurance Company ("Canal") removed the action to this Court on February 9, 2006, pursuant to 28 U.S.C. § 1331. Id. On the same day, Canal, in its answer to Plaintiffs' complaint, filed a third party complaint against Third-Party Defendants Lorenzo Arthur d/b/a Lorenzo Arthur Trucking ("Arthur"), Emanuel Frierson d/b/a Frierson's Auto Sales ("Frierson"), Bryan V. Brunson ("Brunson"), Winnie B. King ("King"), John and Chris Atkinson ("Atkinson"), and Nationwide Mutual Insurance Company ("Nationwide"). (Doc. # 4).
This matter is now before the Court upon Canal's pending motion for summary judgment filed on October 11, 2006. (Doc. # 33). Canal seeks summary judgment in its favor as to Plaintiffs' complaint and Canal's third-party complaint. Id. On October 30, 2006, Plaintiffs and Nationwide separately filed responses in opposition to Canal's motion. (Docs.# 36, 37). Canal replied on November 8, 2006. (Doc. # 38). On June 14, 2007, a hearing was held before the undersigned. (Entry # 46). At that time, all parties were given the opportunity to present their respective legal positions. The undersigned has carefully considered the briefs, pleadings, exhibits, arguments of the parties' counsel, and relevant caselaw. Canal's motion for summary judgment is ripe for disposition.

Facts
On November 16, 2004, Arthur, while driving his 1989 Volvo tractor-trailer, collided with a vehicle driven by the Plaintiffs. The Plaintiffs alleged personal injuries and filed state court actions against Arthur, Nationwide, and Frierson, seeking the recovery of actual and punitive damages. These state court actions were tendered to Canal, with whom Arthur held a liability insurance policy for a defense and indemnification. Canal denied coverage to Arthur on the basis that the 1989 Volvo had been deleted from the policy on August 31, 2004, at the request of Arthur and his agent. However, apparently, Arthur's 1994 Freightliner was still covered by the policy. The policy between Arthur and Canal contained a federally mandated Form MCS-90 public liability endorsement. The Plaintiffs then filed the instant declaratory judgment action against Canal contending that the MCS-90 endorsement applied because of the policy on the 1994 Freightliner. Canal contended the MCS90 endorsement did not apply to the accident between Arthur and the Plaintiffs. Therefore, according to Canal, the liability insurance policy between Canal and Arthur did not provide coverage to the Plaintiffs for the injuries sustained in the accident with Arthur. Subsequently, Canal filed the pending motion for summary judgment.

Summary Judgment Standard
In a motion for summary judgment, the moving party bears the burden of showing summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322, 106 S.Ct. 2548. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. *713 Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir.1991). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir.1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir.1993).

Canal's Arguments
Canal first asserts summary judgment in its favor should be granted because Arthur requested the deletion of the 1989 Volvo from the policy effective August 31, 2004, nearly three months before the accident with the. Plaintiffs' vehicle. Canal maintains that while it still had a policy with Arthur covering the 1994 Freightliner, the 1989 Volvo was deleted from this policy and remained out of service, with no license plate, and parked in Arthur's front yard until the date of the accident.
Canal next asserts the Form MCS-90 endorsement contained in the insurance policy issued to Arthur by Canal does not apply to the circumstances surrounding the accident between Arthur and the Plaintiffs. Canal maintains the accident between Arthur and the Plaintiffs did not involve the operation, maintenance, or use of a motor vehicle subject to the financial responsibility requirements of the Motor Carrier Act of 1980. Therefore, according to Canal, the MCS-90 endorsement does not apply and coverage under the insurance policy between Canal and Arthur is not available. In support of this position, Canal asserts Arthur neither transported hazardous cargo nor was engaged as a forhire motor carrier transporting property in interstate commerce at the time of the accident, two requirements necessary to implicate the Form MCS-90 endorsement. For these reasons, Canal maintains summary judgment in its favor should be granted.

Nationwide's Arguments
Nationwide, the Plaintiffs' uninsured motorist carrier, maintains summary judgment in favor of Canal should not be granted. Nationwide first asserts that a strict reading of the language in the MCS-90 endorsement makes the endorsement applicable and therefore should provide coverage for Arthur. Nationwide contends insurance polices are subject to general rules of contract construction and the terms in the policies must be given their plain, ordinary, and popular meaning. According to Nationwide, the MC90 endorsement in this case contains clear language that calls for coverage. Nationwide maintains that Canal issued Arthur a public liability insurance policy that included a Form MCS-90 endorsement and Arthur's 1989 Volvo was subject to the Motor Carrier Act of 1980. Therefore, Nationwide argues that under a strict reading of the clear language in the endorsement, specifically that once a motor carrier was "subject to" the Act, coverage applies. Nationwide also asserts the public policy of protecting innocent motorists from negligent interstate carriers calls for the enforcement of the MCS-90 endorsement in this case. For these reasons, *714 Nationwide maintains summary judgment in Canal's favor is inappropriate.

Plaintiffs' Arguments
Plaintiffs, like Nationwide, maintain summary judgment in favor of Canal should not be granted. Plaintiffs assert that to trigger coverage in this case all that is required is Arthur was operating in a for-hire capacity while transporting property in interstate commerce. Plaintiffs maintain Arthur met these requirements and therefore the MCS-90 endorsement is implicated. Plaintiffs further argue Congress intended the MCS-90 endorsement to provide for broad coverage in numerous situations and the public policy behind the endorsement contemplates coverage when applicable. According to the Plaintiffs, Canal foresaw the possibility of Arthur's negligence and provided him with a MCS-90 endorsement. Canal therefore created a duty to the public to protect it in the event of Arthur's negligence while operating his motor carriers. Thus, under the facts of this case, the Plaintiffs assert the MCS-90 endorsement should apply to provide coverage for Arthur. For these reasons, the Plaintiffs maintain summary judgment in Canal's favor is inappropriate.

Discussion
The Motor Carrier Act of 1980, codified as Title 49, United States Code, Section 31139, states:
The Secretary of Transportation shall prescribe regulations to require minimum levels of financial responsibility sufficient to satisfy liability amounts established by the Secretary covering public liability, property damage, and environmental restoration for the transportation of property by commercial motor vehicle in the United States between a place in a State and a place in another State.
49 U.S.C. § 31139(b)(1)(A). Pursuant to this statutory authority, the Secretary of Transportation set minimum levels of financial responsibility for both for-hire motor carriers operating motor vehicles that transport property in interstate commerce and motor carriers operating motor vehicles transporting hazardous materials, regardless of whether these motor carriers engaged in interstate commerce. 49 C.F.R. §§ 387.3(a)(b), 387.7(a). Specifically, the Secretary prescribed that for-hire motor carriers who transport non-hazardous property in interstate commerce must maintain a minimum level of financial responsibility of $750,000. 49 C.F.R. § 387.9(1). The Secretary further required that proof of this financial responsibility "shall consist of `Endorsement(s) for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980' (Form MCS-90) issued by an insurer(s)." 49 C.F.R. § 387.7(d)(1). In this matter, Canal issued an insurance policy to Arthur that contained the required Form MCS-90 endorsement, and provided coverage for at least the minimum of $750,000 as prescribed by the Secretary, on the basis Arthur was a for-hire motor carrier that transported non-hazardous property in interstate commerce. The MCS-90 endorsement issued by Canal stated:
In consideration of the premium stated in the policy to which this endorsement is attached, the insurer [Canal] agrees to' pay, within the limits of liability described herein, any final judgment recovered against the insured [Arthur] for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in *715 the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.
(Doc. # 33, Exhibit C).[1] As stated, on November 16, 2004, Arthur, while driving his 1989 Volvo tractor-trailer, collided with a vehicle driven by the Plaintiffs. The Plaintiffs filed state court actions which were tendered to Arthur's insurer, Canal. Canal denied coverage and the Plaintiffs filed the instant declaratory judgment action contending that the MCS-90 endorsement issued by Canal to Arthur applied to the facts surrounding the Plaintiffs' collision with Arthur.
According to counsel for the parties, there is no Fourth Circuit precedent to resolve the issues before this Court. This is apparently a matter of first impression in this Circuit. The Court has carefully reviewed the caselaw presented by counsel on behalf of their respective clients. While the caselaw cited provides guidance to this Court, it does not clearly resolve the contested issues existing in this case. The issues to be resolved in this case fall squarely between the tension that arises when a federal policy is in place to protect the public, yet the written language of this policy arguably limits the protection. Notably, the facts of this case indicate there were injured parties, the Plaintiffs, who allegedly suffered those injuries as a result of the negligent conduct of Arthur. As noted, Canal issued Arthur the federally mandated Form MCS-90 endorsement but denied coverage under the endorsement for the injuries suffered by the Plaintiffs due to Arthur's alleged negligence. The Court will now address the issue of whether the MCS-90 endorsement in place at the time of the accident between Arthur and the Plaintiffs applies in this case.
As stated, according to 49 C.F.R. § 387.3, the Motor Carrier Act of 1980 applies to "for-hire motor carriers operating motor vehicles transporting property in interstate or foreign commerce" and "to motor carriers operating motor vehicles transporting hazardous materials, hazardous substances, or hazardous wastes in interstate, foreign, or intrastate commerce." 49 C.F.R. § 387.3(a)(b). In the present case, there is no evidence Arthur was transporting any hazardous materials or substances at the time of the accident.
Therefore, the first issue to be resolved is whether Arthur was operating in a forhire capacity as a motor carrier at the time of the accident between Arthur and the Plaintiffs. Canal asserts Arthur was not a for-hire motor carrier at the time of the accident and cites to Arthur's deposition where he testifies he was not hauling any property when the accident occurred, nor *716 was he being paid for taking the trip that led to the accident. According to Canal, Arthur was solely on a personal mission to drive the 1989 Volvo tractor-trailer a few miles from his home for the purpose of trying to sell the truck to third-party defendant Emanuel Frierson d/b/a Frierson's Auto Sales ("Frierson"). (Doc. # 33). Both Nationwide and the Plaintiffs argue that Arthur was engaged in a for-hire capacity at the time of his accident with the Plaintiffs and cite to Arthur's Department of Transportation and Interstate Commerce Commission number that allowed him to take the 1989 Volvo tractor-trailer over state lines and led to Canal issuing the MCS-90 endorsement in its policy with Arthur. (Docs.# 36, 37). However, even when taking the facts and inferences in the light most favorable to Nationwide and the Plaintiffs, as is required at this stage of the proceedings, the Court concludes Arthur was not engaged as a for-hire motor carrier pursuant to 49 C.F.R. § 387.3(a) at the time of the accident with the Plaintiffs. In making this determination, the Court notes Arthur, in his deposition, answered "no" when asked "were you getting paid by anyone when the accident [with the Plaintiffs] happened." (Doc. # 33, citing Deposition of Arthur, p. 52, lines 3-11).
The second issue to be resolved is whether Arthur was transporting property at the time of the accident between Arthur and the Plaintiffs. Canal asserts Arthur was not transporting property at the time of the accident and cites to his deposition to support its position. Again, Canal maintains Arthur drove the 1989 Volvo tractor-trailer only a few miles from his home strictly on a personal mission to sell it to Frierson when the accident occurred with the Plaintiffs. (Doc. # 33). Both Nationwide and the Plaintiffs argue Arthur's 1989 Volvo tractor-trailer was subject to the Motor Carrier Act of 1980 as he had a Department of Transportation and Interstate Commerce Commission number and was issued a policy by Canal that included the Form MCS-90 endorsement. Therefore, according to Nationwide and the Plaintiffs, the MCS-90 endorsement should still apply in this case. (Docs. # 36, 37). However, even when taking the facts and inferences in the light most favorable to Nationwide and the Plaintiffs, as is required at this stage of the proceedings, the Court concludes Arthur was not transporting property pursuant to 49 C.F.R. § 387.3(a) at the time of the accident with the Plaintiffs. In making this determination, the Court notes Arthur, in his deposition, answered "no" when asked "were you hauling anything when the accident [with the Plaintiffs] happened." (Doc. # 33, citing Deposition of Arthur, p. 52, lines 3-11).
The final issue to be resolved is whether Arthur was engaged in interstate commerce at the time of the accident between Arthur and the Plaintiffs. Canal asserts Arthur did not transport property in interstate commerce as a for-hire motor carrier. In support of its position, Canal cites to Arthur's deposition testimony in which he testified he had not transported property outside South Carolina in approximately two years and on the day of the accident he did not leave the state, nor was it ever his intention to leave the state that day. (Doc. # 33). Both Nationwide and the Plaintiffs argue Arthur's 1989 Volvo tractor-trailer was "subject to" the Motor Carrier Act of 1980, and therefore the MC90 endorsement should provide coverage, because Arthur had a Department of Transportation and Interstate Commerce Commission number that allowed him to take the 1989 Volvo tractor-trailer over state lines and Canal issued him an insurance policy that contemplated such interstate travel, as evidenced by the inclusion of the MCS-90 endorsement. (Docs. # 36, 37).
*717 The facts indicate Arthur was a resident of Darlington, South Carolina, at the time of his accident with the Plaintiffs. (Doc. 4, ¶ 26). The accident occurred when Arthur left his home in Darlington, South Carolina in the 1989 Volvo tractor-trailer. Arthur traveled on South Carolina Highway 1123, near Hartsville, South Carolina. (Doc. # 1, ¶ 9). At the same time, the Plaintiffs traveled on South Carolina Highway 28 near Hartsville, South Carolina. (Doc. # 1, ¶ 10). Arthur and the Plaintiffs' vehicles collided at the intersection of the two highways due to Arthur's alleged negligence, resulting in personal injuries to the Plaintiffs. (Doc. # 1,111111-13). Therefore, at the time of the accident, it is reasonable to conclude Arthur engaged solely in an intrastrate, not interstate, trip as the facts indicate he traveled between two points, the towns of Darlington and Hartsville, South Carolina, and never left the state.
"It is well settled that the determination of whether transportation between two points in [a] State is interstate (or foreign) or intrastate in nature depends on the `essential character' of the shipment ... [c]rucial to this determination is the shipper's fixed and persisting intent at the time of the shipment ... [i]ntent is ascertained from all the facts and circumstances surrounding the transportation." Century Indemnity Co. v. Carlson, 133 F.3d 591, 595 (8th Cir.1998)(quoting Roberts v. Levine, 921 F.2d 804, 812 (8th Cir.1990)).[2] Furthermore, whether transportation was interstate in nature is determined at the time of the accident. See Id. at 599 (holding transportation of corn at the time of the accident constituted interstate transportation); see also General Security Insurance Co. v. Barrentine, 829 So.2d 980, 983 (Fla.App.2002)(holding Form MCS-90 endorsement coverage did not apply as there was no evidence the driver was using the truck in the interstate shipment of goods at the time of the collision).
After careful consideration of all the facts and circumstances surrounding Arthur's *718 operation of the 1989 Volvo tractortrailer at the time of the accident, the facts indicate Arthur's transportation was solely intrastate, not interstate in nature. Again, the accident with the Plaintiffs occurred when Arthur left his home in Darlington, South Carolina in the 1989 Volvo tractortrailer and traveled on South Carolina Highway 1123, colliding with the Plaintiffs as they traveled on South Carolina Highway 28. (Doc. # 1, ¶¶ 9-13). Taking the facts and circumstances in the light most favorable to Nationwide and the Plaintiffs as the non-moving parties, the Court concludes Arthur's transportation at the time of the accident was intrastate, not interstate in nature. In making this determination, the Court notes Arthur, in his deposition, testified he was driving the 1989 Volvo tractor-trailer from his home to Frierson's place of business, approximately a one to two mile trip, to see if Frierson wanted to purchase the vehicle. (Doc. # 33, Fn. 1, citing Deposition of Arthur, p. 49, lines 20-25).
Furthermore, the facts support the conclusion that Arthur did not have the requisite "fixed and persisting intent" at the time of the accident, as articulated in Carlson, to travel outside of South Carolina. In making this determination, the Court notes Arthur, in his deposition, testified he had not transported property outside the state in approximately two years. (Doc. # 33, citing Deposition of Arthur, p. 28, lines 10-21). Additionally, when asked during his deposition "[a]t any time onon your route from your house to Mr. Emanuel [Frierson's] place, did you leave South Carolina," Arthur answered "no." (Doc. # 33, quoting Deposition of Arthur, p. 52, lines 12-18). When then asked during his deposition "[w]as it ever your intention to leave South Carolina that day," Arthur answered "no." Id. Therefore, after careful consideration of all the facts and circumstances surrounding Arthur's transportation at the time of the accident, the Court concludes Arthur's transportation was not interstate, as is required for the Form MCS-90 endorsement in this case to apply. Rather, his transportation was solely intrastate. Since the transportation was intrastate, the Form MCS-90 endorsement does not apply. Barrentine, 829 So.2d at 983 (holding Form MCS-90 endorsements only apply to interstate transportation and do not apply to intrastate transportation); see also Century Indemnity Co. v. Carlson, 133 F.3d 591 (8th Cir.1998).
In summary, as previously stated, according to 49 C.F.R. § 387.3(a), the Motor Carrier Act of 1980 applies to "for-hire motor carriers operating motor vehicles transporting property in interstate or foreign commerce." Therefore, as the record before the Court reflects, Arthur, at the time of the accident with the Plaintiffs, was not a for-hire motor carrier operating a motor vehicle transporting property in interstate commerce. Thus, the Form MCS-90 endorsement issued by Canal to Arthur does not apply or provide coverage in this case. Accordingly, the Court is compelled to grant Canal's pending motion for summary judgment.
The Plaintiffs cite to Royal Indemnity Co. v. Jacobsen, 863 F.Supp. 1537 (D.Utah 1994), to support their argument that once the MCS-90 endorsement is purchased, the public policy on which it is based should provide coverage regardless of the type of product being hauled. (Doc. # 36, p. 4, emphasis in original). The Court has carefully reviewed the Royal Indemnity decision in which the District Court ruled the MCS-90 endorsement in that case applied despite the fact Jacobsen, the interstate motor carrier, was hauling alfalfa hay, an agricultural product not subject to the jurisdiction of the Motor Carrier Act. In finding the endorsement did provide *719 coverage, the Royal Indemnity court held "[a]pplication of the endorsement should not depend on whether Jacobsen was hauling one particular type of product on the day of the accident instead of another ... [s]uch an application would not advance the public policy goals of the Motor Carrier Act in protecting the general public." 863 F.Supp. at 1542. The Court recognizes the holding of Royal Indemnity and the apparent public policy behind the Motor Carrier Act. However, as set forth above, the statutes, federal regulations, and Circuit caselaw direct the Court to the conclusion that an MCS-90 endorsement does not apply to a purely intrastate trip, as occurred in this matter.
The Court reaches its conclusion based on a careful review of the relevant caselaw before it. The Court is hesitant to deny coverage when a policy has been issued that arguably could cover the injury and damage suffered by those injured in the accident. However, the caselaw shows that courts examining the questions presented before this Court carefully analyzed the specific language of the relevant statutes and regulatory provisions that apply. As those courts have done, this Court has followed the same approach to reach its conclusion. The Court does note that it could have reached an opposite conclusion based on public policy considerations asserted by Nationwide and the Plaintiffs and discussed in Royal Indemnity. The argument they assert is a compelling one. However, the caselaw cited simply does not broadly apply the public policy to provide coverage under the facts of this case and similar cases. The caselaw does focus on the language of the relevant statutory and regulatory provisions at issue in this case. This Court chooses to do the same to reach its decision. Congress and the appropriate regulatory agencies could broaden and clarify the relevant language now in place to provide coverage in factual scenarios similar to the one in this matter. At this time, Congress and the appropriate regulatory agencies have not done so in light of the existing caselaw.

Conclusion
Therefore, for the reason set forth herein, it is ORDERED that Canal's motion for summary judgment is GRANTED.
IT IS SO ORDERED.
NOTES
[1] As previously stated, Canal first asserts summary judgment in its favor should be granted because Arthur requested the deletion of the 1989 Volvo from the policy effective August 31, 2004, nearly three months before the accident with the Plaintiffs' vehicle. Canal maintains that while it still had a policy with Arthur covering the 1994 Freightliner, the 1989 Volvo was deleted from this policy and remained out of service, with no license plate, and parked in Arthur's front yard until the date of the accident. The Court is not persuaded by this argument as the endorsement in this case clearly states Canal will pay "any final judgment recovered against the insured [Arthur] for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy." (Doc. # 33, Exhibit C, emphasis added). However, as noted, Canal also asserts summary judgment in its favor is appropriate because, according to Canal, the endorsement does not apply to the facts of this case. Accordingly, the Court will address the merits of this argument.
[2] In Carlson, a farmer, Randy Kuenzel, grew corn near Cologne, Minnesota. When he produced a surplus he hired J and T Transport, Inc. to deliver the surplus to one of three large terminals along the Minnesota River in Savage, Minnesota. J and T would deliver the surplus to one of the terminals via a route entirely within Minnesota. Upon delivery, the surplus would be unloaded, weighed, and graded and a check would be issued to the J and T driver and forwarded to Kuenzel. Kuenzel knew the river terminals shipped their accumulated grain, including the surplus received from Kuenzel, on barges on the Minnesota River to the Mississippi River and that the grain would probably travel down the Mississippi River to other states. The final destination was of no concern to Kuenzel as he was more concerned with which river terminal would pay him the best price for his surplus corn. En route on one shipment of Kuenzel's grain to one of the river terminals, the J and T driver collided with Carlson's vehicle, killing him. His wife sued. Century Indemnity had insured J and T, and the policy included a Form MCS-90 endorsement. Century Indemnity argued coverage did not apply because the transportation at issue was intrastate and entirely within the state of Minnesota. The District Court agreed with Century Indemnity and found the endorsement did not apply, and therefore, there was no coverage.

The Eighth Circuit Court of Appeals reversed and held Kuenzel intended his surplus grain to reach a river terminal and knew that the journey to that terminal was part of the interstate transportation of the grain itself, even though he had no control over where the terminal would ultimately send the grain. Therefore, the Eighth Circuit concluded Kuenzel had the "fixed and persistent intent" to send his grain to an interstate terminal where he knew it would be shipped to points outside Minnesota. Thus, the shipment of his grain on the J and T truck was interstate in nature and coverage under the Form MCS-90 endorsement applied. The Eighth Circuit stated explicitly, "[a]ccordingly, we hold that the transportation of corn at the time of the accident constituted interstate transportation." Carlson, 133 F.3d at 599.