# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 1, 2010

No. 10-60196

Lyle W. Cayce
Clerk

CANAL INSURANCE CO.,

Plaintiff-Appellee,

v.

BERNETTA COLEMAN

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

Before DeMOSS, BENAVIDES, and ELROD, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

An MCS-90 endorsement to an automotive insurance policy obligates an insurer to cover an insured's negligence involving "vehicles subject to the financial responsibility requirements of . . . the Motor Carrier Act." The Motor Carrier Act, in turn, creates minimum levels of financial responsibility "for the transportation of property by motor carrier . . . within the United States." Plaintiff-appellee Canal Insurance Company seeks a declaratory judgment that the MCS-90 endorsement does not cover an accident where the truck involved was not engaged in the transportation of property at the time of the accident. The district court granted summary judgment for Canal. We affirm. We hold that the MCS-90 covers only liability for the transportation of property. That

No. 10-60196

said, we take no position as to whether the liability in this case was "for the transportation of property," because the parties stipulated that it was not.

## I. FACTS AND PROCEDURAL BACKGROUND

This is an insurance dispute arising from a truck accident. The relevant facts are undisputed. Timothy Briggs, Jr., a trucker and employee of Defendant P.S. Transport, was backing a truck into his driveway when he collided with a Toyota Camry occupied by Defendant-appellant Bernetta Coleman and her husband Glen. At the time of the accident, Briggs was returning home from work. He was driving the truck "bobtail" when he collided with the Colemans, meaning that the truck had no trailer attached.[1] The sole issue on this appeal is whether P.S. Transport's automotive insurance policy — and more specifically, the policy's federally mandated MCS-90 endorsement — covers the accident between Briggs and the Colemans.

The Colemans sued Briggs and P.S. Transport in state court in Mississippi. They assert personal-injury claims against Briggs for negligence, and they also seek to recover from P.S. Transport under the doctrine of *respondeat superior*. In response to the state-court lawsuit, Canal filed this suit in the United States District Court for the Northern District of Mississippi against Briggs, P.S. Transport, and the Colemans. Canal seeks a declaratory

---

[1] As discussed in greater detail below, *see infra* Part III.C, we do not hold today that a "bobtail" truck can never be engaged in the transportation of property. Nor do we take any position as to whether Briggs was actually engaged in "transportation of property" at the time of the accident in this case.

2

No. 10-60196

judgment that it is not required under the P.S. Policy to indemnify P.S. Transport for any judgment the Colemans obtain.[2]

The insurance policy at issue on this appeal is a Basic Automobile Liability Policy that Plaintiff-appellee Canal issued in favor of P.S. Transport ("the P.S. Policy").[3]   The policy provides:

> SECTION A-BASIC AUTOMOBILE LIABILITY INSURANCE
> I.    COVERAGE A – BODILY INJURY LIABILITY
>        COVERAGE B – PROPERTY DAMAGE LIABILITY:
> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance, or use . . . of an owned automobile . . . .

P.S. Transport did not own the truck Briggs was driving at the time of the accident.   Rather, the truck was under a "lease-and-employment" agreement, meaning that Briggs owned the truck but leased it to P.S. Transport as part of

---

[2] Initially, the suit also involved a second Canal-issued insurance policy, Policy Number 455687, which Canal issued to Timothy Briggs ("the Briggs Policy").   Canal first sought a judgment that it was not required under either the P.S. Policy or the Briggs Policy to pay a judgment arising from the accident.   Canal eventually amended its complaint to exclude the Briggs Policy from this action. Coleman makes a number of arguments about the interrelationship of the two policies. She "fears that, under the facts of this case, any adjudication that Canal is obligated to pay damages under the Briggs policy" might have a preclusive effect on her argument that Canal is obligated to pay under the P.S. Policy.

The Court does not consider Coleman's arguments regarding the Briggs Policy because it is no longer part of this lawsuit.   *See King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994) (noting that an amended complaint supersedes original complaint and renders it of no legal effect "unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading") (citing *Boelens v. Redman Homes, Inc.,* 759 F.2d 504, 508 (5th Cir. 1985))).   Moreover, even if the Briggs Policy were properly before us, we would not need to reach Coleman's arguments about it because we have determined that the MCS-90 does not cover the accident.   That determination does not depend on an assessment of the Briggs Policy.

[3] Policy Number 438979.

No. 10-60196

his employment contract.  Accordingly, Briggs's truck was not an "owned automobile" within the meaning of the policy and did not fall within the plain terms of the policy's coverage.

Although the P.S. Policy did not explicitly cover Briggs's truck, it did contain a federally mandated policy endorsement, the MCS-90.  The purpose of the MCS-90 endorsement is to "assure compliance" with federal minimum levels of financial responsibility for motor carriers.  *See* 49 C.F.R. § 387.15 illus. 1. The MCS-90 endorsement must be attached to any liability policy issued to for-hire motor carriers operating motor vehicles transporting property in interstate commerce.  *See* 49 C.F.R. §§ 387.3, 387.7.  The endorsement creates a suretyship, which obligates an insurer to pay certain judgments against the insured arising from interstate commerce activities, even though the insurance contract would have otherwise excluded coverage. *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 470 (5th Cir. 2005).

After Canal filed this declaratory-judgment action, P.S. Transport failed to respond, and the district court entered default judgment against it.  Both Canal and Coleman moved for summary judgment on various issues, including the one currently on appeal: whether the MCS-90 endorsement applies.[4]  The district court granted Canal's motion and denied Coleman's.  Coleman appealed. She now asks this Court to reverse the district court's order granting summary judgment in favor of Canal and order the district court to grant her motion for summary judgment.

---

[4] The district court made other determinations on summary judgment (for instance, that Canal did not have a duty to defend P.S. Transport in the state-court action).  Coleman appeals only the district court's determination that the MCS-90 did not cover the accident.

4

No. 10-60196

## II. STANDARD OF REVIEW

We review "'the grant of summary judgment *de novo,* applying the same standards as the district court.'" *In re Egleston,* 448 F.3d 803, 809 (5th Cir. 2006) (quoting *In re Intelogic Trace, Inc.,* 200 F.3d 382, 386 (5th Cir. 2000)). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "We construe all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of motions for summary judgment." *Murray v. Earle,* 405 F.3d 278, 284 (5th Cir. 2005) (citation omitted).

## III. ANALYSIS

The sole question the Court must answer today is whether the MCS-90 endorsement covers the Briggs-Coleman accident. This is a question of federal law. *Lincoln Gen. Ins. Co. v. Garcia*, 501 F.3d 436, 439 (5th Cir. 2007). We conclude that the answer is "no" because (1) the MCS-90 only covers liability for the transportation of property, and (2) the parties stipulate that Briggs was not engaged in the transportation of property at the time of the collision.

Our analysis proceeds in four parts. First, in Part III.A, we consider the plain text of the MCS-90 and the statute it effectuates and conclude that the MCS-90 only provides coverage "for the transportation of property." Second, in Part III.B, we look to relevant precedent from this Court and find that it supports our conclusion about the MCS-90's scope. Third, in Part III.C, we ask whether the MCS-90 applies in this case in light of our determination that it

No. 10-60196

only covers liability for the "transportation of property." Finally, in Part III.D, we consider and reject Coleman's alternative reading of the MCS-90.

A.

In order to determine the scope of the MCS-90's coverage, we look first to its plain terms. The endorsement provides:

> In consideration of the premium stated in the policy to which this endorsement is attached, *the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980* regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

No. 10-60196

49 C.F.R. § 387.15 illus. 1 (emphasis added).  In short, the endorsement requires Canal to pay any final judgment against P.S. Transport for "public liability" resulting from the negligent use of "motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980." *Id.*  Because the parties do not make negligence an issue on this appeal, the issue before us today is simply whether Briggs's truck was "subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980."

We must next look to the relevant portion of the Motor Carrier Act, § 30, to determine whether Briggs's vehicle was subject to its financial-responsibility requirements.[5]  It reads:

> The Secretary of Transportation shall prescribe regulations to require *minimum levels of financial responsibility* sufficient *to satisfy liability amounts* established by the Secretary covering public liability, property damage, and environmental *restoration for the transportation of property* by motor carrier or motor private carrier (as such terms are defined in section 13102 of this title) in the United States between a place in a State and–
> > (A) a place in another State;
> > (B) another place in the same State through a place outside of that State; or
> > (C) a place outside the United States.

49 U.S.C. § 31139(b) (emphasis added).

---

[5] Section 30 of the Motor Carrier Act is codified as amended at 49 U.S.C. § 31139(b). *See* Motor Carrier Act of 1980, Pub. L. No. 96-296, § 30, 94 Stat 793 (1980). Section 29 — also referenced by the MCS-90 —  is not relevant in this case, as it simply amended part of the previous statute by "striking out 'approved by the Commission.' and inserting in lieu thereof 'approved by the Commission, in an amount not less than such amount as the Secretary of Transportation prescribes pursuant to, or as is required by, the provisions of section 30 the Motor Carrier Act of 1980.'" *Id.* § 29.

No. 10-60196

After reading the plain text of the MCS-90 and § 30, we conclude that the endorsement covers vehicles only when they are presently engaged in the transportation of property in interstate commerce. We reason as follows: the MCS-90 applies to vehicles subject to § 30 of the Motor Carrier Act. Section 30 requires minimum levels of financial responsibility, which must be sufficient to "satisfy liability . . . for the transportation of property in interstate commerce." Thus, the MCS-90 is a way of conforming with statutory minimum-financial-responsibility requirements. And because those requirements exist to "satisfy liability . . . for the transportation of property," it follows that the MCS-90 must cover liabilities "for the transportation of property." Nothing in the MCS-90's text indicates that it covers *other* kinds of liabilities, i.e., liabilities incurred outside of the transportation of property.

## B.

In addition to the plain text of the endorsement, relevant precedent from this Court supports our conclusion that the MCS-90 does not apply here because Briggs — per the parties' stipulation — was not engaged in the transportation of property at the time of the accident. Neither this Court nor most federal courts have ever directly addressed the precise question before us.[6] However, we

---

[6] Besides the district court below, only one federal court has engaged at length the issue of whether the MCS-90 covers an accident that happened while a truck was not transporting property. *See Brunson ex rel. Brunson v. Canal Ins. Co.*, 602 F. Supp. 2d 711 (D.S.C. 2007). In that case, a tractor-trailer driver collided with the plaintiffs' vehicle while "solely on a personal mission." *Id.* at 716. As in the case before us, it was undisputed in *Brunson* that the truck involved in the accident was not a "covered vehicle" under the policy. *Id.* at 715 n.1. Accordingly, the court had to decide only whether the MCS-90 endorsement applied. The court held that the MCS-90 did not apply because, inter alia, the driver "was not transporting property pursuant to 49 C.F.R. § 387.3(a) at the time of the accident." *Id.* at 716.

Coleman argues that the district court erred in relying on *Brunson* as persuasive authority. We disagree. Coleman points out that, in *Brunson*, two other statutory

No. 10-60196

have considered whether the MCS-90 covers accidents that fail to meet another statutory prerequisite: transportation "in the United States." *See Garcia*, 501 F.3d at 439; *see also Canal Indem. Co. v. Galindo*, 344 F. App'x 909 (5th Cir. 2009) (per curiam). Our reasoning as to the "in the United States" limitation applies with equal force to the "transportation of property" limitation.

In *Lincoln General Insurance Co. v. Garcia*, we considered the scope of the MCS-90B, which is identical to the MCS-90 except that it applies to transportation of passengers rather than property.[7] *Garcia* involved a bus accident that happened in Mexico: a tour bus collided with a vehicle carrying eight passengers, all of whom were either injured or killed. *Id.* at 437. The insurance company sought a declaratory judgment that the MCS-90B endorsement did not cover the accident. *Id.* at 438. When the issue came before us, we began our inquiry by looking to the plain language of the endorsement, as we have done here. Like the MCS-90, the MCS-90B requires coverage for vehicles "subject to" statutory minimum-financial-responsibility requirements for the "transportation . . . in the United States." *See* 49 U.S.C. § 31138(a); 49 § C.F.R. 387.39 illus. 1. We analyzed the plain language of the MCS-90B and

---

prerequisites for application of the MCS-90 were missing. However, the fact that the Court in *Brunson* had multiple alternative reasons for its ruling does not mean that the district court in this case erred in considering it.

[7] *Compare* 49 C.F.R. § 387.15 illus. 1 (the MCS-90 endorsement), *and* 49 U.S.C. § 31139 ("minimum financial responsibility for transporting property"), *with* 49 C.F.R. § 387.39 illus. 1 (the MCS-90B endorsement), *and* 49 U.S.C. § 31138 ("minimum financial responsibility for transporting passengers"). We have previously determined that MCS-90B cases control our interpretation of the MCS-90. *See Galindo*, 344 F. App'x at 911 ("By using identical language in the two statutes to apply liability to passengers and to property, Congress gave the statutes identical reach.").

No. 10-60196

the relevant statute, and we held that the MCS-90B would not cover an accident that happened outside the United States:

> Reading the statute in conjunction with the MCS-90B endorsement, the minimum levels of financial responsibility requirements apply to the transportation of passengers "in the United States"; thus, the endorsement does not require an insurer to pay judgments recovered against the insured if the transportation of passengers by motor vehicle does not occur in the United States. Accordingly, the endorsement does not cover the Morquechos' accident in Mexico because the accident occurred in a place where the motor vehicle was not subject to the minimum financial responsibility requirements in § 31138.

*Garcia*, 501 F.3d at 441.

Several years later, we considered another accident that occurred outside the United States involving a motor carrier subject to federal minimum-financial-responsibility regulations. *See Galindo*, 344 F. App'x at 910. The only difference between *Garcia* and *Galindo* was that *Galindo* involved an MCS-90 endorsement — rather than an MCS-90B — because the carrier was engaged in the transportation of property, not passengers. In *Galindo*, we followed *Garcia* and concluded that the MCS-90 endorsement only covered transportation inside the United States. *Id.* at 911.

Our decision today follows the reasoning of *Garcia* and our unpublished opinion in *Galindo*. The commonality in our reasoning is this: in all these cases, we determined the MCS-90's applicability with reference to time of the loss. As

10

No. 10-60196

discussed above, *see supra* Part III.A, we believe that the MCS-90's text clearly compels this approach.[8]

Other courts have varied as to whether they determine the MCS-90's application at the time of the loss, but ours appears to be the majority approach. *See, e.g.*, *Century Indem. Co. v. Carlson*, 133 F.3d 591, 595 (8th Cir. 1998) (agreeing with "the determination that the grain in question in this case *at the time of the accident* traveled in interstate commerce" (emphasis added)); *Canal Ins. Co. v. J. Perchak Trucking, Inc.*, 3:CV-07-2272, 2009 WL 959596, at *2 (M.D. Pa. Apr. 6, 2009) (denying summary judgment because "[c]onsideration of the

---

[8] Some secondary literature has called the question of whether the MCS-90's application is determined at the time of the loss "unsettled." *See generally MCS 90: Is It Limited According to the Use of the Truck?*, Motor Carrier Liability (CCH) ¶ 1941 (2009). That said, other literature takes the view that the MCS-90's application is specific to the time of the loss. One stated:

> An important final point about the inclusion of an MCS-90 endorsement on an auto insurance policy is that it does not apply on a blanket basis to every accident. The endorsement only applies to accidents involving motor vehicles that are subject to the financial responsibility requirements of §§29 and 30 of the Act. The Act applies to "for-hire" vehicles transporting any property in interstate or foreign commerce where the gross vehicle weight rating is in excess of 10,000 pounds. . . . If the vehicle involved in the accident was not transporting goods for a third party or did not have a gross vehicle weight rating in excess of 10,000 pounds or was not engaged in interstate commerce, the MCS-90 endorsement would not apply. . . . *Each claim must be examined individually to determine whether the Act applies to the actual vehicle and the activities of the vehicle involved in the accident.*

Glenn F. Brown, *Navigating the Motor Carrier Insurance Maze*, AM. BANKR. INST. L. REV., Oct. 28, 2009, at 57 (emphasis added); *see also* WILLIAM E. KENTWORTHY, TRANSPORTATION SAFETY AND INSURANCE LAW § 3.02 (2010) (discussing the Eighth Circuit's application of a trip-specific approach to interstate commerce); DAVID N. NISSENBERG, THE LAW OF COMMERCIAL TRUCKING § 6.05 (2003) (noting that "[w]hether a trip is in interstate or intrastate commerce may be determinative of the application . . . the MCS-90 endorsement"); SAUL SORKIN, GOODS IN TRANSIT § 3.03 (2010) ("It has been held that the destination intended by the passenger or shipper at the commencement of the journey or shipment and known to the carrier determines the character of the commerce.").

11

No. 10-60196

important issues presented in this case should be made only in the context of a concrete determination as to whether the insured's vehicle was involved in interstate or intrastate commerce *at the time of the accident*" (emphasis added)); *Canal Ins. Co. v. Paul Cox Trucking*, 1:05-CV-2194, 2006 WL 2828755, at *4 (M.D. Pa. Oct. 2, 2006) (holding that a federal court has jurisdiction over the question of whether truck was "engaged in interstate commerce *at the time of the accident*" (emphasis added)); *Kolencik v. Progressive Preferred Ins. Co.*, 1:04-CV-3507, 2006 WL 738715, at *7 (N.D. Ga. Mar. 17, 2006) ("Based on the foregoing, the court concludes that endorsement MCS-90 plays no role in the instant accident because it involved only intrastate commerce from Cartersville, Georgia to Acworth, Georgia with no intention of the dirt ever going beyond Acworth."); *Branson v. MGA Ins. Co.*, 673 So. 2d 89 (Fl. Dist. Ct. App. 1996) (declining to apply the MCS-90 to purely instrastate transportation); *Gen. Sec. Ins. Co. v. Barrentine*, 829 So. 2d 980, 984 (Fl. Dist. Ct. App. 2002) ("The issue is not whether a truck might be used for an interstate shipment in the future. That much could be said of nearly any tractor-trailer rig.  Rather, *the issue is whether the injury in question occurred while the truck was operating in interstate commerce.*" (emphasis added)).  *But see, e.g.*, *Royal Indem. Co. v. Jacobsen*, 863 F. Supp. 1537, 1541 (D. Utah 1994) ("In the court's view, Royal's 'trip specific' reading of the Holdens' ICC endorsement (or any ICC endorsement for that matter) is incorrect."); *Travelers Indem. Co. of IL v. W. Am. Specialized Transp. Servs., Inc.*, 235 F. Supp. 2d 522, 529–30 (W.D. La. 2002) (holding that the truck's procurement or lease agreement, rather than the circumstances of the particular loss, determine the MCS-90's application); *Reliance Nat'l Ins. v. Royal*

12

No. 10-60196

*Indem. Co.,* 99-Civ.-10920, 2001 WL 984737, at *4–7 (S.D.N.Y. Aug. 24, 2001) (same).

In sum, the weight of authority from this Circuit and beyond supports our conclusion that the MCS-90 does not cover vehicles when they are not presently transporting property in interstate commerce.

C.

The next logical step, then, would be to ask whether the MCS-90 covered the accident in question in this case. With respect to that question, the district court held:

> Congress empowered the Secretary of Transportation to "prescribe regulations to require minimum levels of financial responsibility sufficient to satisfy liability amounts . . . covering public liability, property damage, and environmental restoration for the *transportation of property* by motor carrier . . . ." 49 U.S.C. § 31139(b)(1) (emphasis added). Similarly, the regulations are applicable to "for-hire motor carriers operating motor vehicles *transporting property* in interstate or foreign commerce." 49 C.F.R. § 387.3(a) (emphasis added). In the present case, there is no dispute that Briggs was not transporting property at the time of the accident.

*Canal Ins. Co. v. P.S. Transport, Inc.*, 03:09-CV-0024, 2010 WL 817290, at *6 (N.D. Miss. Mar. 4, 2010).

Had Coleman not explicitly conceded that Briggs's liability was not "for the transportation of property," the district court would have needed to ask what that phrase means. The relevant statute, § 30 of the Motor Carrier Act, indicates that its terms are to be read as "defined in section 13102 of this title." 49 U.S.C. § 31139(b). Section 13102, in turn, defines "transportation" quite broadly:

> (23) Transportation.--The term "transportation" includes--

13

No. 10-60196

(A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and

(B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

49 U.S.C. § 13102. Given the statute's broad terms, it is at least arguable that Briggs's conduct at the time of the accident could be termed "transportation of property." However, because the district court accepted Coleman's stipulation that it was not, we do not reach that question.

D.

Despite the relevant statute's broad definition of "transportation," Coleman chose not to argue here or at the district court that Briggs was engaged in the "transportation" of property at the time of the accident. Instead, she argued for an entirely different interpretation of the MCS-90. Because her interpretation is contrary to the endorsement's plain terms, we reject it.

Coleman argues that, although the MCS-90 specifies that it covers vehicles "subject to" § 30, we should not understand § 30's terms as "prerequisites" to coverage. She says,"The only prerequisite that should matter is whether a motor carrier is required to have a 'Form MCS-90' endorsement attached to its insurance policy." She argues that "whenever a truck operated by [a motor carrier required to carry an MCS-90] is involved in an accident," the MCS-90 should provide coverage anytime the policy itself does not. In other words, she argues, the MCS-90 applies to a carrier's vehicles regardless of who is driving them and for what purpose. To support her argument that § 30's limitations are

14

No. 10-60196

not prerequisites to coverage, she notes the following language from the endorsement:

> the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 *regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.*

49 C.F.R. § 387.15 illus. 1 (emphasis added).

We reject Coleman's textual argument. The "regardless of" language she quotes does not mean that the endorsement *always* applies. To read this clause as such would be to obviate the clause that precedes it, which unambiguously delineates when the MCS-90 applies. "'It is a basic precept of statutory construction that we should give effect to every clause and word of a statute where possible and should not construe statutes in a way that renders words or clauses superfluous.'" *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 375 (5th Cir. 2009) (en banc) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). Thus, we will not read the MCS-90's text so as to render its applicability language superfluous.

The better reading of the regulation's "regardless of" language is this: the MCS-90 applies to vehicles subject to the Motor Carrier Act's financial-responsibility requirements. *For those vehicles*, and only for those vehicles, the MCS-90 provides coverage "regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or

15

elsewhere."   Moreover, we have previously rejected Coleman's argument regarding the MCS-90's "regardless of" language.  *See Garcia*, 501 F.3d at 442 ("[A]lthough the Morquechos correctly quote some of the language from the endorsement, they ignore the critical phrase in the endorsement limiting the insurer's payment of judgments recovered against the insured to 'public liability resulting from negligence in the operation, maintenance or use of *motor vehicles subject to financial responsibility requirements of Section 18 of the Bus Regulatory Reform Act of 1982. . . .*'").

In addition to her textual argument, Coleman argues that our trip-specific application of the "transportation of property" limitation would lead to manifest unfairness.  We have previously held that the federal minimum-financial-responsibility scheme was intended to "'assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers.'"  *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 672 (5th Cir. 2001) (citing *Canal Ins. Co. v. First Gen. Ins. Co.,* 889 F.2d 604, 611 (5th Cir. 1989), *modified on other grounds,* 901 F.2d 45 (5th Cir. 1990)).  The thrust of Coleman's argument is that a trip-specific application of the "transportation of property" limitation would thwart this broad, remedial purpose of the federal minimum-financial-responsibility scheme for motor carriers.  We disagree.

As a general matter, the policy goals of the federal minimum-financial-responsibility scheme are not inconsistent with our holding today that the "transportation of property" limitation applies on a trip-specific basis.  Indeed, we recently elaborated that the MCS-90 operates to protect the public "*when a licensed carrier uses a leased vehicle to transport goods* pursuant to an ICC

certificate." *Wells v. Gulf Ins. Co.*, 484 F.3d 313, 316–17 (5th Cir. 2007) (quoting *Empire Fire & Marine Ins. Co. v. Guar. Nat'l Ins. Co.*, 868 F.2d 357, 362–63 (10th Cir. 1989)) (emphasis added). Many other courts have similarly stated the MCS-90's purpose as protecting the public from vehicles *while they are being used for the transportation of property* in interstate commerce. *E.g.*, *Travelers Ins. Co. v. Transp. Ins. Co.*, 787 F.2d 1133, 1140 (7th Cir. 1986) (stating that regulations are intended "to ensure that an ICC carrier has independent financial responsibility to pay for losses sustained by the general public *arising out of its trucking operations*" (emphasis added)); *Herrod v. Wilshire Ins. Co.*, 2010 WL 3075457, at *3 (D. Utah 2010) (noting that the Motor Carrier Act "addressed abuses in the trucking industry that threatened public safety, including motor carriers' use of 'leased or borrowed vehicles to avoid financial responsibility *for accidents that occurred while goods were being transported in interstate commerce*.'" (quoting *Canal Ins. Co. v. Distrib. Servs., Inc.,* 320 F.3d 488, 489 (4th Cir. 2003) (emphasis added))).

Further, as discussed above, the true gatekeeper of the financial-responsibility scheme's broad remedial purpose is Congress's broad definition of "transportation." When Congress prescribed minimum levels of responsibility for liability for the transportation of property, it pointed to a very particular definition of the term. *See* 49 U.S.C. § 31139(b) (referring to definitions in 49 U.S.C. § 13102). That definition shows us that, in this context, "transportation" means "services related to [the] movement [of property], including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23)(B); *see also supra* Part III.C. Because Coleman

No. 10-60196

stipulated that Briggs was not engaged in the transportation of property at the time of the accident in this case, we have no occasion today to remark on whether the statutory definition reaches this case. But in light of this definition, we are confident rejecting Coleman's argument that a trip-specific approach would necessarily produce unjust results.

## IV. CONCLUSION

The MCS-90 endorsement requires an insurer to pay for an insured's negligence only "for the transportation of property." Because the parties stipulate that Briggs was not engaged in "transportation of property" at the time of his accident with the Colemans, the MCS-90 did not provide coverage. Accordingly, we AFFIRM the decision of the district court.