# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2023

Lyle W. Cayce
Clerk

No. 22-60283

Wesco Insurance Company,

*Plaintiff—Appellee*,

*versus*

Edward Eugene Rich, *as wrongful death beneficiary of* LaDonna C. Rich, Deceased; Edward Shayne Rich, *as wrongful death beneficiary of* LaDonna C. Rich, Deceased,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:20-CV-305

---

Before Stewart, Willett, and Oldham, *Circuit Judges*.

Per Curiam:*

The parties here—an insurer and tort claimants—dispute the insurer's maximum theoretical liability under a surety agreement. By separate agreement, the insurer has committed that it "will pay" whatever

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

amount we identify as the surety agreement's upper limit. We conclude that the surety agreement caps liability at $750,000, and we therefore AFFIRM.

I

This appeal concerns an "MCS-90" surety endorsement that Wesco Insurance Company included with a liability-insurance policy that it issued to Sam Freight Solutions, LLC. The *policy* provides up to $1,000,000 in insurance coverage for a specific "covered auto," a 2012 Volvo Tractor (and certain trailers attached thereto). The MCS-90 *surety endorsement*, on the other hand, is a policy endorsement by which Wesco assumed up to "$750,000" in liability for "any final judgment recovered against [Sam Freight] for public liability resulting from negligence in the operation" of any vehicle. The MCS-90 endorsement is not insurance. Instead, it "creates a suretyship, which obligates an insurer to pay certain judgments against the insured . . . , even though the insurance contract would have otherwise excluded coverage." *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010); *see* 49 C.F.R. §§ 387.3; 387.7.

On July 29, 2018, LaDonna Rich died in an automobile collision involving a 2010 Freightliner. The Defendants–Appellants are her beneficiaries, and they filed a wrongful-death suit against Sam Freight in Mississippi state court. The insurance policy (as distinct from the MCS-90 surety endorsement) that Sam Freight purchased from Wesco does not name the 2010 Freightliner as a covered auto. Therefore, that policy does not independently offer coverage for the collision.

While the state-court action was pending, Wesco filed this federal diversity suit seeking declaratory relief against the Beneficiaries (and others). The parties and issues in the federal proceeding narrowed until only Wesco and the Beneficiaries remained, with just one dispute between them: "the amount of coverage that the MCS-90 endorsement would provide in the

event of a judgment against Sam Freight." The Beneficiaries argued that the MCS-90 endorsement would provide up to $1,000,000 in coverage, while Wesco argued that $750,000 would be the maximum available amount. Both parties sought summary judgment on that sole remaining issue.

The district court granted summary judgment for Wesco, declaring that "[t]he MCS-90 endorsement unambiguously provides that Wesco shall not be liable for amounts in excess of $750,000." The district court denied the Beneficiaries' motions for reconsideration. This appeal timely followed. While this appeal was pending, the parties reached a settlement agreement under which Wesco agreed that it "will pay" whichever of the two amounts we determine the surety agreement to require.

## II

### A

As an initial matter, we have jurisdiction only if this case presents an actual "case or controversy." U.S. Const. art. III; *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006). The "case or controversy" requirement prevents us from "advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted). Ripeness is one aspect of this requirement. *See generally Abbott Labs. v. Gardner*, 387 U.S. 136 (1967). A declaratory action is ripe if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (internal quotation marks omitted). "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).

No. 22-60283

Wesco and the Beneficiaries have adverse legal interests in a substantial controversy that amounts to $250,000 (the difference between $750,000 and $1,000,000). Resolving that controversy involves only the "purely legal" interpretation of the policy and the endorsement; no "further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987). The controversy is real and immediate because Wesco has agreed to pay whatever sum we determine that the surety endorsement requires. At present, then, this case is ripe. That being true, we need not consider whether the case was ripe when the district court issued its judgment. *See DM Arbor Court, Ltd. v. City of Houston*, 988 F.3d 215, 219–20 (5th Cir. 2021).

B

The MCS-90 is a "federally mandated" endorsement. *Canal Ins. Co.*, 625 F.3d at 246. "The operation and effect of a federally mandated endorsement is a matter of federal law." *Lincoln Gen. Ins. Co. v. De La Luz Garcia*, 501 F.3d 436, 439 (5th Cir. 2007); *see Minter v. Great Am. Ins. Co. of New York*, 423 F.3d 460, 470 (5th Cir. 2005) ("Interpretation of th[e MCS-90] endorsement is governed by federal law."). Our analysis focuses on "the plain language of the endorsement." *Canal Ins. Co.*, 625 F.3d at 250. To the extent that Mississippi substantive law governs any residual questions, such as those regarding only the policy, "construction of an insurance policy [is] a question of law, which we review de novo." *State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols., LLC*, 751 F.3d 684, 688 (5th Cir. 2014) (emphasis omitted) (quoting *Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d 714, 717 (Miss. 2004)).

The insurance policy offers "coverage" of up to "$1,000,000 per accident," but only for "covered autos." The parties agree that the 2010 Freightliner is not a "covered auto" under the insurance policy's definition of that term.

4

By contrast, the MCS-90 endorsement makes Wesco "liable," as a surety, for up to "$750,000 for each accident." The endorsement applies "regardless of whether or not each motor vehicle is specifically described in the policy." The MCS-90 consists of a fill-in-the-blank form that provides spaces for the parties to identify, among other things: the insurer's name, the insuree for whom the insurer is acting as surety, and the policy number that the endorsement supplements. There is also a blank space for filling in the insurer's maximum suretyship liability. In this case, the following amount appears in that blank space: "[T]he company shall not be liable for amounts in excess of $750,000 for each accident." Thus, according to the district court's summary, Wesco agreed to provide $1 million in *insurance* coverage for Sam Freight's covered autos, but only $750,000 in public *liability* coverage for all other vehicles.

The Beneficiaries disagree. According to them: "[T]he blank space is supposed to be filled in to reflect the amount of coverage that was purchased by the insured"—that is, $1,000,000, not $750,000. The Beneficiaries offer several overlapping arguments to establish that crucial premise. None succeed. The Beneficiaries begin by urging that "the $750,000.00 is a fiction that never existed" because "[t]he insurance company did not have the authority to unilaterally change the coverage." This isn't so much an argument as it is a restatement of the crucial premise. The number that appears in the blank space ($750,000) is a "change" *only if* the Beneficiaries are otherwise correct that the MCS-90 and the insurance policy must have identical coverage limits. The "unilateral[] change" argument might have force if that premise were correct, but the argument itself cannot *prove* the underlying premise.

The Beneficiaries next posit a proof in our precedent. We have noted, for example, that the MCS-90 "accomplishes its purpose by reading out [of the insurance policy] only those clauses in the policy that would limit the

5

ability of a third party victim to recover for his loss." *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 673 (5th Cir. 2001). According to the Beneficiaries, this means that Wesco cannot "read[] out"—that is, replace—the policy limit with the surety limit. This argument, too, fails for circularity. If the surety endorsement is a separate agreement with a separate monetary limit, then both limits can coexist in separate amounts. The Beneficiaries' offer a contrary premise—that the two limits must be in matching amounts. But once again, while the Beneficiaries' argument does *depend* on that premise, it does not *prove* the premise.

At root, the Beneficiaries' real argument is that the district court erred by "treat[ing] the insurance policy and the endorsement as if they were separate standalone documents." We disagree. The MCS-90, for instance, contains the following language: "In consideration of the premium stated in *the policy* to which *this endorsement* is attached, the insurer (the company) agrees to pay, within the limits of liability described *herein*, any final judgment recovered against [Sam Freight] . . . ." This language sets up an unambiguous distinction between the policy (on one hand) and the endorsement (on the other). Likewise, the words "this endorsement" show that the liability limit described "herein" is the limit that appears in the endorsement, not the policy. Neither the policy nor the endorsement requires Wesco to provide suretyship liability in the exact same amount that it offers insurance coverage.

III

The MCS-90's plain text limits Wesco's suretyship liability to $750,000. We therefore AFFIRM.